**Electronically Filed
Supreme Court
SCAP-16-0000588
15-JUN-2017
10:05 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---

KRISHNA NARAYAN; SHERRIE NARAYAN; VIRENDRA NATH; NANCY MAKOWSKI;
SIMON YOO; SUMIYO SAKAGUCHI; STEPHEN XIANG PANG; FAYE WU LIU;
MASSY MEHDIPOUR, individually and as Trustee for Massy Mehdipour
Trust dated June 21, 2006; G. NICHOLAS SMITH; TRISTINE SMITH;
CLIFFORD W. CHAFFEE; BRADLEY CHAFFEE, individually and as
Trustee of the Charles V. Chaffee BRC Stock Trust dated 12/1/99
and The Clifford W. Chaffee BRC Stock Trust dated 1/4/98; GARY
S. ANDERSON; RONALD W. LORENZ and RENEE Y. LORENZ,
Plaintiffs-Appellants,

vs.

ASSOCIATION OF APARTMENT OWNERS OF KAPALUA BAY CONDOMINIUM;
CATHY ROSS; ROBERT PARSONS; and ANDREW MITCHELL,
Defendants-Appellees.

---

SCAP-16-0000588

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-16-0000588; S.P. NO. 16-1-0043 RAN)

JUNE 15, 2017

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ., AND
CIRCUIT JUDGE KUBO, IN PLACE OF NAKAYAMA, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I.   Introduction

This is the third opinion in a series of recent decisions addressing an arbitrator's statutory disclosure requirements and vacatur on the basis of evident partiality based on Hawaiʻi Revised Statutes ("HRS") §§ 658A-12 and -23 (Supp. 2001); see Noel Madamba Contracting LLC v. Romero, 137 Hawaiʻi 1, 364 P.3d 518 (2015); Nordic PCL Const., Inc. v. LPIHGC, LLC, 136 Hawaiʻi 29, 358 P.3d 1 (2015).  Nordic and Madamba established standards for evaluating claims of evident partiality.  Here, we clarify the scope of relationships that require disclosure.

Krishna Narayan, Sherrie Narayan, Virendra Nath, Nancy Makowski, Simon Yoo, Sumiyo Sakaguchi, Stephen Xiang Pang, Faye Wu Liu, Massy Mehdipour, G. Nicholas Smith, Tristine Smith, Clifford W. Chaffee, Bradley Chaffee, Gary S. Anderson, and Ronald W. Lorenz (collectively, "Appellants"), appeal from an August 15, 2016 final judgment of the Circuit Court of the First Circuit ("circuit court"),[1] based upon its findings of fact, conclusions of law, and order confirming an arbitration award in favor of the Respondents, Association of Apartment Owners of Kapalua Bay Condominium, Cathy Ross, Robert Parsons, and Andrew Mitchell (collectively, the "AOAO").

---

[1]   The Honorable Rhonda A. Nishimura presided.

This case concerns a dispute over financial issues that arose during construction of the Kapalua Bay Condominium project (the "Project").  Appellants are a group of individual condominium owners in the Kapalua Bay Condominium.  Previously, Appellants and several other condominium owners sued the Project's developers and management companies regarding financial problems that arose during construction (the "Developer Action").  See Narayan v. Ritz-Carlton Dev. Co., Inc., 135 Hawai'i 327, 350 P.3d 995 (2015).[2]  The present matter arose from the Appellants' challenge of the AOAO's vote to convert the residential community into a hotel.  The dispute was submitted to arbitration.  The issues on appeal relate to the adequacy of the neutral arbitrator's disclosures in the arbitration.  The circuit court concluded that the undisclosed relationships did not constitute "evident partiality" requiring vacatur.  We affirm.

---

[2]   At issue before this court in the Developer Action was whether the condominium owners had entered into a valid agreement to arbitrate.  This court concluded that the condominium owners did not unambiguously assent to arbitration and, therefore, the purported agreement to arbitrate was unenforceable.  See Narayan, 135 Hawai'i at 335, 350 P.3d at 1003.  On January 11, 2016, the United States Supreme Court vacated this court's judgment and remanded the case for further consideration in light of DIRECTV, Inc. v. Imburgia, 136 S. Ct. 463 (2015).  See Ritz-Carlton Dev. Co. v. Narayan, 136 S. Ct. 800 (2016).  The parties have recently filed supplemental briefs and the remanded action is pending disposition.

## II.   Background

### A.   Arbitration Proceedings

### 1.   Initial Disclosures and Pre-arbitration Motions

The matter was originally submitted to the American Arbitration Association but, by agreement of the parties, was referred to Dispute Prevention & Resolution, Inc. ("DPR") on July 24, 2014.  The parties selected the Honorable Victoria Marks (ret.) to serve as the neutral arbitrator (the "Arbitrator") on August 1, 2014.[3]  After her selection, DPR provided the parties with the following disclosures on her behalf:

> I am not familiar with any of the parties.
>
> Both Mr. Cox and Ms. Luke appeared before me when I was on the bench.[4]
>
> I served as an arbitrator in a case where Mr. Cox represented one of the parties.  That case was resolved before the arbitration hearing.
>
> My husband, Robert A. Marks, is a lawyer who is Of Counsel at Price Okamoto Himeno & Lum.  I do not know the identity of all of my husband's clients.  Similarly, I am not aware of all the cases he is working on and what lawyers he may be working with or opposing.  I do not believe that he

---

[3]    In some arbitrations with more than one arbitrator, arbitrators are appointed by parties without an expectation of neutrality.  It is not uncommon in commercial arbitrations with three arbitrators for each party to appoint one non-neutral arbitrator each; the two non-neutral arbitrators then appoint a neutral arbitrator by agreement.  See Daiichi Hawai'i Real Estate Corp. v. Lichter, 103 Hawai'i 325, 343-44, 82 P.3d 411, 429-30 (2003).  See generally, Seth H. Lieberman, Something's Rotten in the State of Party-Appointed Arbitration:  Healing ADR's Black Eye That is "Nonneutral Neutrals," 5 Cardozo J. of Conflict Resol. 215 (2004) for a discussion of the differences between neutral arbitrators and non-neutral party-appointed arbitrators.

[4]    Joachim P. Cox, Esq., represents the Appellants and Michele-Lynn Luke, Esq., represents the AOAO.

> currently has any cases with any of the lawyers in this matter.  Similarly, I do not believe that he is familiar with any of the parties or their principals.
>
> I am on the Board of the following organizations:  1) The Mediation Center of the Pacific; 2) The Hawaii Women's Legal Foundation; 3) The American Judicature Society-Hawaii Chapter; 4) United Cerebral Palsy Association of Hawaii; and 5) The Hawaii Soccer Association.  The first 3 organizations are law related and lawyers from various firms in Honolulu [-] large firms to solo practitioners – sit on these boards.  In addition, the board members change from year-to-year.
>
> I am also a social golf member of MidPacific [sic] Country Club.  I am not familiar with all of the members of this club.
>
> Counsel and the parties should inform the arbitrator and each other of any additional information that a reasonable person would consider likely to affect the impartiality of the arbitrator.
>
> I believe that I can be a fair and impartial arbitrator in this matter.

The parties submitted their expert disclosures and reports in March and September 2015.  The witness lists were submitted in October 2015.

On September 15, 2015, one month before the arbitration hearing started, Appellants moved to exclude the AOAO's expert on condominium governance, Philip Nerney, Esq. ("Nerney").  Appellants argued, inter alia, that Nerney was providing improper and unfounded legal conclusions on liability.  The Arbitrator granted this motion in part and denied it in part, and precluded Nerney from testifying regarding any party's intent and damages, but he was allowed to testify on condominium governance issues.

## 2.   Arbitration Hearing

The arbitration hearing was conducted in several sessions from October 19, 2015 through November 12, 2015.

The AOAO's expert on damages, Richard Stellmacher ("Stellmacher"), testified at the hearing.  Among other things, Stellmacher testified that he originally visited the Project when an attorney for the Developer Action briefly retained him. He misidentified the attorney during his oral testimony and subsequently submitted a declaration[5] clarifying that he "had been retained by [a]ttorney Lex Smith [("Smith")], on behalf of his clients, which included certain Marriott entities, involved in other litigation."[6]  The declaration also stated that Stellmacher "contacted Mr. Smith" to confirm that his work was terminated shortly after he visited the property and that he was not provided any work product related to the matter.  Over Appellants' hearsay objection, the Arbitrator admitted the declaration into evidence.

---

[5]   Stellmacher orally identified John Sopuch ("Sopuch") of the Starn O'Toole Marcus & Fisher law firm.  Appellants moved to strike Stellmacher's expert opinions because his involvement with Sopuch in this matter would have created a conflict with one of the plaintiffs named in the arbitration.  The AOAO submitted Stellmacher's declaration in response to this motion.  The declaration clarified that Stellmacher had named Sopuch by mistake, with the confusion caused by the fact that Sopuch hired Stellmacher's firm in connection with a separate matter, and that he had not been retained by Sopuch or by the Starn O'Toole firm in connection with the Project.

[6]   Smith is an attorney with the Kobayashi Sugita & Goda law firm, which served as counsel in the Developer Action to the original developers of the Project.

On January 7, 2016, the Arbitrator issued her final arbitration award in favor of the AOAO.

### 3.   Post-award Disclosure Demands

On January 13, 2016, Appellants requested that DPR provide updated disclosures "pursuant to DPR Arbitration Rule 9A and HRS § 658A-12" relating to the AOAO, counsel for the AOAO, in-house counsel for the AOAO, and the AOAO's witnesses and experts.  DPR responded that it would not provide a substantive response to Appellants' request as "neither the applicable DPR Arbitration Rules nor the relevant provisions of the Uniform Arbitration Statute (HRS Chapter 658A) provide for a post arbitration award disclosure process[.]"  On February 3, 2016, Appellants sought additional disclosures regarding the Arbitrator's relationship with the Kobayashi Sugita & Goda ("KSG") law firm.  DPR responded once again that it would not provide a post-arbitration disclosure.

### B.   Circuit Court Proceedings

### 1.   Motion to Confirm, Motion to Vacate, and Discovery

In the meantime, the AOAO filed a special proceeding in the circuit court to confirm the arbitration award.  Before filing their memorandum in opposition, Appellants filed a Notice of Taking Deposition upon Written Questions of AOAO counsel Robert C. Kessner, Esq., and his law firm; the AOAO's in-house counsel, Peter Horovitz, Esq.; and the AOAO's expert witness, Nerney.

7

Appellants also filed a Notice of Taking Deposition upon Written Questions of KSG, the law firm that briefly retained Stellmacher for the Developer Action but did not represent the AOAO and had no direct involvement in the arbitration proceedings.[7]

Appellants also moved to vacate the award on grounds of evident partiality due to the Arbitrator's refusal to provide post-award supplementary disclosures. Appellants alleged that the AOAO's position had no basis in law or the applicable bylaws, that the Arbitrator "oddly adopted [the AOAO's] unsupported interpretation of the law," and that "the Arbitrator's findings fly in the face of the law." Appellants stated that they demanded post-award disclosures because they

---

[7]    Discovery from an arbitrator or arbitration organization pursuant to HRS § 658A-14 (Supp. 2001) is discussed in the text, infra. With respect to court rules governing discovery, according to Hawaiʻi Rules of Civil Procedure ("HRCP") Rule 81(g) (2006), Chapter V of the HRCP relating to depositions and discovery (HRCP Rules 26 through 37) is applicable to HRCP Rule 81(a)(5) (2006) "[a]pplications to a circuit court under chapter 658 [sic] relating to arbitration, and proceedings thereon prior to judgment." Rule 81(g)(1) also provides:

> the court may by order direct that said Chapter V shall not be applicable to the proceeding if the court for good cause finds that the application thereof would not be feasible or would work an injustice[.]

Although the propriety of post-award discovery is not raised as an issue on appeal, we note that HRCP Rule 81(g)(1)allows a court to prohibit or restrict discovery in court proceedings relating to arbitration if allowing discovery "would work an injustice." Cases restricting post-award discovery include Midwest Generation EME, LLC v. Continuum Chem. Corp., 768 F. Supp. 2d 939, 943 (N.D. Ill. 2010) ("Post-award discovery is rare, and courts have been extremely reluctant to allow it. It is often a 'tactic' employed by disgruntled or suspicious parties who, having lost the arbitration, are anxious for another go at it.") (footnote omitted); and Provost v. Intrafusion Holding Corp., 926 F. Supp. 2d 532, 537 n.4 (D. Del. 2013) ("Courts have been understandably hesitant to grant extensive discovery in cases alleging arbitrator bias where the complaining party has not presented clear evidence of any impropriety.").

were "surprised" by the arbitration award, although they acknowledged they had no reason to believe that the Arbitrator may be partial to the AOAO during the course of the arbitration. Yet, Appellants argued, "the Arbitrator's disregard for the law . . . now coupled with the Arbitrator's refusal to provide appropriate disclosures, calls into question whether there are undisclosed relationships with [the AOAO], [the AOAO's] counselor or [the AOAO's] witnesses which arose during the course of the arbitration and — to a reasonable person — may have compromised the Arbitrator's neutrality." Appellants requested that the court continue the hearing given the lack of evidence and grant Appellants' Motion to Compel Production of Records from DPR ("Motion to Compel"), which had been filed earlier.

DPR filed a memorandum in opposition to Appellants' Motion to Compel, arguing that it was both procedurally and substantively flawed. The AOAO also filed a memorandum in opposition, arguing that further disclosures by the Arbitrator should not be compelled because Appellants failed to make a prima facie showing that a ground for vacating the arbitration award exists, in accord with HRS § 658A-14(d).[8]

---

[8]    HRS § 658A-14(d)(Supp. 2001) provides:

> In a judicial, administrative, or similar proceeding, an arbitrator or representative of an arbitration organization
>
> (continued. . .)

Appellants filed a reply memorandum, arguing that they had made a prima facie showing of evidence to support a motion to vacate with regard to the KSG law firm.  Appellants argued that the relationship rose to the level of evident partiality because KSG had an "extensive relationship" with the Arbitrator.  Appellants argued that despite KSG's lack of direct connection with the parties to the case, KSG was relevant because Stellmacher's declaration allegedly involved "hearsay testimony" by Smith of KSG.[9]  Appellants also argued that a ruling in their favor would have "had severe repercussions to KSG's client" in the Developer Action, and that "a reasonable person could infer that a defense verdict in this arbitration would help the Arbitrator to garner KSG's recommendation to serve in the Developer Action, should it be ordered to arbitration. . . ."  Appellants also alleged that Nerney, the AOAO's expert witness,

_____

(continued. . .)
> is not competent to testify, and shall not be required to produce records as to any statement, conduct, decision, or ruling occurring during the arbitration proceeding, to the same extent as a judge of a court of this State acting in a judicial capacity.  This subsection does not apply:
> ....
> (2) [t]o a hearing on a motion to vacate an award under section 658A-23(a)(1) or (2) if the movant establishes prima facie that a ground for vacating the award exists.

(Emphasis added.)

[9]   Stellmacher's declaration stated that his "firm records" showed that he was retained by Smith, and that he then contacted Smith to confirm that his work was shortly terminated after his visit to the property.  Appellants claimed that when this testimony from Mr. Stellmacher and Mr. Smith was admitted, "KSG became . . . a witness."

had evaded service and had not yet responded to written deposition questions regarding a potential relationship with the Arbitrator, yet because he "is an attorney, and condominium governing documents often contain arbitration clauses, it is reasonably plausible to anticipate that Mr. Nerney had or has a professional relationship that should have been disclosed."

Nerney was thereafter deposed upon written interrogatories. Nerney testified that the Arbitrator served as a mediator or arbitrator on two cases in which he appeared as an attorney. First, he testified that in 2013, he represented a party in a matter in which the Arbitrator was selected as an arbitrator. Second, he testified that on April 9, 2015, he represented an association of apartment owners regarding a request for a reasonable accommodation in a half-day mediation with the Arbitrator, but the matter was ultimately not resolved by mediation.

Appellants then moved to compel the Arbitrator to respond to the deposition upon written questions pursuant to a showing of prima facie evidence. The circuit court granted Appellants' motion, and the Arbitrator was deposed upon written questions. She testified, among other things, that she found in favor of Nerney's client on a summary judgment motion in a prior

arbitration,[10] and that Stellmacher had testified as a witness in a prior arbitration at some point in time between January 1, 2011 and July 24, 2014.

### 2.  Supplemental Memorandum in Support of Appellants' Motion to Vacate

After months of discovery, Appellants submitted a supplemental memorandum in support of their Motion to Vacate. Appellants asserted that the Arbitrator had failed to comply with the disclosure requirements of HRS § 658A-12(b) by failing to disclose facts learned by the Arbitrator after accepting appointment that a reasonable person would consider likely to affect the impartiality of the Arbitrator.  Appellants claimed that the following disclosures were not provided:

> (1) the Arbitrator recently presided over an arbitration involving [the AOAO's] damages expert;
>
> (2) [The AOAO's] expert on condominium governance, Philip Nerney, Esq. —- on whom the Arbitrator primarily relied in rendering her award —- had a mediation before the Arbitrator while the above-captioned matter was pending and a prior arbitration in which the Arbitrator found in Mr. Nerney's client's favor on a motion for summary judgment; and
>
> (3) the law firm of a hearsay witness had an extensive relationship with the Arbitrator, including at least two mediations during the pendency of this arbitration and two referrals to the Arbitrator.

Following the completion of briefing, the court held a hearing on the motion to confirm the arbitration award and the motion to vacate.  The circuit court found in favor of the AOAO, denied

---

[10]   The Arbitrator testified that Nerney was counsel to a party in a matter in which she presided as an arbitrator at some point between January 1, 2011 and July 24, 2014.

the motion to vacate, and granted the motion to confirm the arbitration award.  The court found that the Arbitrator complied with her duty to make a "reasonable inquiry" into possible conflicts and that none of the relationships challenged by Appellants rose to a level that would require disclosure.  The court's relevant conclusions were as follows:

> 8.   At the outset, the Arbitrator complied with her duty to make a "reasonable inquiry" upon being informed of the parties' proposed witnesses (lay and expert) in September and October, 2015, prior to commencement of the arbitration proceedings.  In other words, as it pertains to Stellmacher, the KSG law firm, and Mr. Nerney, none of these "relationships" or "facts" are such "that a reasonable person would consider likely to affect [the Arbitrator's] impartiality," necessitating their disclosure.
>
> 9.   None of these "facts" or "relationships" rise to the level of "evident partiality."  Compare with Madamba, where the court held that failure by the arbitrator during the pendency of the arbitration proceedings to disclose his prospective relationship with the Cades Schutte law firm (counsel for respondent Romero) where there existed a "concrete possibility" that the Cades Schutte law firm would be handling his personal retirement accounts, constituted undisclosed facts showing a "reasonable impression of partiality," sufficient to support vacatur.
>
> 10.  The facts are undisputed that as between the Arbitrator and Stellmacher, the only association or dealing was that of Stellmacher having testified as a witness in a prior arbitration, for which [the Arbitrator] served as the arbitrator at some point in time between January 1, 2011 and July 24, 2014.  Moreover, as noted by the Madamba court, in adopting Justice Black's reasoning in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d. 301 (1968), it would be incumbent upon the arbitrator to disclose to the parties any dealings that might create an impression of possible bias.  The association between the Arbitrator and Stellmacher was not substantive in nature.  The dealings between the Arbitrator and Stellmacher do not create an impression of possible bias.
>
> 11.  The facts are undisputed that as between the Arbitrator and the KSG law firm, their association occurred sometime between January 1, 2011 and January 7, 2016, as [the Arbitrator] had been selected as an arbitrator on five (5) matters in which the KSG law firm represented a party

13

and also served as a mediator on three (3) matters in which the KSG law firm represented a party. The association between the Arbitrator and the KSG law firm was not substantive in nature. The dealings between the Arbitrator and the KSG law firm do not create an impression of possible bias.

12. The facts are undisputed that 1) as between the Arbitrator and Mr. Nerney, their association occurred when Mr. Nerney appeared as counsel for a party before the Arbitrator sometime prior to July 25, 2014 (more than two years before the subject arbitration) and the arbitration was decided on a summary judgment motion in favor of Mr. Nerney's client, and 2) sometime in or around April 9, 2015, Mr. Nerney represented an apartment association (owner requested reasonable accommodation) in a half-day mediation before the Arbitrator but was not successful. The association between the Arbitrator and Mr. Nerney was not substantive in nature. The dealings between the Arbitrator and Mr. Nerney do not create an impression of possible bias.

The circuit court then entered final judgment.

## C.   The Appeal and Application for Transfer

Appellants appealed from the circuit court's final judgment confirming the arbitration award. Appellants raised the following four points of error on appeal:

A. The Circuit Court erred in concluding, as a matter of law that under HRS section 658A-12(b), the Arbitrator need not disclose any ongoing or past instances in which she served as a neutral and (1) a non-attorney witness appeared before her in another matter, or (2) attorney witnesses, one of whom appeared as an expert witness in the subject arbitration and the other of whom was a hearsay lay witness, retained her services on behalf of a client in other matters.

B. The Circuit Court erred in finding that the Arbitrator's service as an arbitrator in 2013 in a matter in which Mr. Nerney represented a party occurred "more than two years before the subject arbitration," given that the parties initiated the subject arbitration on July 24, 2014.

C. The Circuit Court impermissibly raised the standard for evident partiality for nondisclosures by (1) focusing on the "substantive nature" of the relationships in determining whether it creates a reasonable impression of bias, even though the Hawaiʻi Supreme Court has rejected a standard that evaluates the substantiality of a relationship or interest as being overly narrow and (2)

14

separately finding that the relationships do not "rise[] to the level of evident partiality" after determining that the relationships at issue need not be disclosed.

D.  The Circuit Court erred in finding that the Arbitrator made a "reasonable inquiry" into whether any relationships or interactions with the parties' witnesses needed to be disclosed, given that the Arbitrator admitted – during post arbitration discovery – that until recently, she did not maintain a list of the witnesses that appeared before her and that, with respect to at least one witness, discovery of his prior appearance before her required "considerable research" after-the-fact.

This court accepted a transfer of this case from the Intermediate Court of Appeals ("ICA").

### III.  Questions on Appeal

The points of error raised by Appellants are reframed and addressed in this decision as follows:

1.  Whether the "substantive nature" of a relationship is relevant to a determination that facts would demonstrate a reasonable impression of partiality.

2.  Whether an arbitrator has a duty to disclose:

A.  Prior occasions in which a person appearing on a witness list appeared before the arbitrator as a lay or expert witness in unrelated matters.

B.  Prior dealings with a law firm not involved in the present arbitration, where the law firm previously retained an expert witness appearing on a witness list.

C.  Prior dealings with a person appearing on a witness list where that person served as party counsel before the arbitrator in a prior arbitration or mediation.

3.  Whether it was clearly erroneous for the circuit court to conclude that such undisclosed relationships did not create a reasonable impression of partiality.

### IV.  Standards of Review

Judicial review of an arbitration award is limited to the statutory grounds for confirmation, vacatur, modification, and

15

correction.  See HRS § 658A-28(a)(3)-(5) (Supp. 2001).  Review of a motion to vacate an arbitration award "does not involve review of an arbitrator's findings of fact or conclusions of law."  Nordic, 136 Hawai'i at 42, 358 P.3d at 14.  "Rather, it involves review of a circuit court's factual findings and conclusions of law as to whether the statutorily outlined grounds for vacatur exist."  Id.

We review a circuit court's findings of fact under the clearly erroneous standard.  Madamba, 137 Hawai'i at 8, 364 P.3d at 525.  A finding of fact is clearly erroneous when either "the record lacks substantial evidence to support the finding," or, evidence exists to support the finding, but we are left with "the definite and firm conviction in reviewing the entire evidence that a mistake has been committed."  Id. (quoting Nordic, 136 Hawai'i at 41, 358 P.3d at 13).  We review a circuit court's conclusions of law de novo under the right/wrong standard.  Nordic, 136 Hawai'i at 41, 358 P.3d at 13 (quoting Daiichi, 103 Hawai'i at 336, 82 P.3d at 422).  Where a conclusion of law presents a mixed question of law and fact, we review this conclusion under the clearly erroneous standard.  Madamba, 137 Hawai'i at 8, 364 P.3d at 525 (citing Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007)).  A mixed question of law and fact is a conclusion "dependent upon

16

the facts and circumstances of the particular case." Price v.
Zoning Bd. of Appeals, 77 Hawai'i 168, 172, 883 P.2d 629, 633
(1994).

We review a circuit court's rulings on a motion to vacate
for evident partiality under the "clearly erroneous standard"
where the court's challenged conclusion was based on "a mixed
question of law and fact." Madamba, 137 Hawai'i at 9, 364 P.3d
at 526. In this case, we review the court's conclusion that the
arbitrator's contacts with the AOAO's witnesses and an unrelated
law firm would not give a reasonable person the impression of
partiality.

## V. Discussion

### A. Standards for Vacatur under HRS § 658A-23(a)(2)

Judicial review of a motion to vacate an arbitration award
"is confined to the strictest possible limits." Nordic, 136
Hawai'i at 41, 358 P.3d at 13 (quoting Daiichi, 103 Hawai'i at
337, 82 P.3d at 423). An arbitration award may be vacated only
upon the grounds specified in HRS § 658A-23.[11] Pursuant to HRS

---

[11]  HRS § 658A-23(a) outlines the grounds for vacatur of an arbitration award as follows:

> **Vacating award.** (a) Upon motion to the court by a party
> to an arbitration proceeding, the court shall vacate an
> award made in the arbitration proceeding if:
>
> (1)  The award was procured by corruption, fraud, or
> other undue means;
> (2)  There was:

(continued. . .)

§ 658A-23(a)(2)(A), the court must vacate an arbitration award if there was evident partiality by an arbitrator appointed to serve as a neutral. Madamba, 137 Hawai'i at 3, 364 P.3d at 520. Evident partiality may be found in two situations: when an arbitrator fails to make necessary disclosures to the parties, or when additional facts show actual bias or improper motive, even if the arbitrator makes the necessary disclosures. See Valrose Maui, Inc. v. Maclyn Morris, Inc., 105 F. Supp. 2d 1118, 1124 (D. Haw. 2000); see also Schmitz v. Zilveti, 20 F.3d 1043, 1045-47 (9th Cir. 1994) (distinguishing the evident partiality standards applied in "nondisclosure" cases and "actual bias" cases). This court's recent decisions in Nordic and Madamba

---

(continued. . .)

      (A)  Evident partiality by an arbitrator appointed as a neutral arbitrator;
      (B)  Corruption by an arbitrator; or
      (C)  Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
  (3)  An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A-15, so as to prejudice substantially the rights of a party to the arbitration proceeding;
  (4)  An arbitrator exceeded the arbitrator's powers;
  (5)  There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 658A-15(c) not later than the beginning of the arbitration hearing; or
  (6)  The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 658A-9 so as to prejudice substantially the rights of a party to the arbitration proceeding.

    . . . .

18

have addressed the evident partiality standard in nondisclosure cases.

In a nondisclosure case, evident partiality is found where "undisclosed facts demonstrate a reasonable impression of partiality."  Madamba, 137 Hawai'i at 10, 364 P.3d at 527 (quoting Nordic, 136 Hawai'i at 51, 358 P.3d at 23).  Under this standard, a finding of evident partiality "is not dependent on a showing that the arbitrator was actually biased, but instead stems from the nondisclosure itself."  Id. (emphasis added).  The evident partiality standard for nondisclosure cases thus reflects the latter part of the rule that "any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias."  Commonwealth Coatings, 393 U.S. at 150 (emphasis added).[12]

In Nordic, we analyzed the relationship between "evident partiality" and the statutory disclosure requirements found in HRS § 658A-12 (Supp. 2001), which codify an arbitrator's duty to

---

[12]     In both actual bias and nondisclosure cases, facts necessarily exist that create a "reasonable impression of partiality."  In nondisclosure cases, the fact that these facts were not disclosed is enough to find evident partiality.  In "actual bias" cases, where the fact of nondisclosure is not present, parties must prove specific facts, beyond those disclosed, indicating bias.  Thus, if an arbitrator meets the disclosure requirement, the party seeking to establish evident partiality faces a higher burden of proof.  See Woods v. Saturn Distrib. Corp., 78 F.3d 424, 427 (9th Cir. 1996) (distinguishing the burden of proof in nondisclosure cases as at a lower threshold than actual bias cases).

disclose facts that may create an appearance of bias.  In relevant part, this standard provides:

> **§ 658A-12 Disclosure by arbitrator.** (a) Before accepting appointment, <u>an individual who is requested to serve as an arbitrator, after making a reasonable inquiry, shall disclose</u> to all parties to the agreement to arbitrate and arbitration proceeding and to any other arbitrators <u>any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding</u>, including:
>
> (1) A financial or personal interest in the outcome of the arbitration proceeding; and
>
> (2) <u>An existing or past relationship with any of the parties</u> to the agreement to arbitrate or the arbitration proceeding, <u>their counsel</u> or representatives, <u>a witness</u>, or <u>another arbitrator</u>.
>
> (b) <u>An arbitrator has a continuing obligation to disclose</u> to all parties to the agreement to arbitrate and arbitration proceeding and to any other arbitrators <u>any facts that the arbitrator learns after accepting appointment which a reasonable person would consider likely to affect the impartiality of the arbitrator</u>.

HRS § 658A-12(a)-(b) (emphases added).

Pursuant to HRS §§ 658A-12(a) and (b), "arbitrators must at the outset disclose, then continually disclose throughout the course of an arbitration proceeding, any known facts that a reasonable person would consider likely to affect the arbitrator's impartiality."  <u>Nordic</u>, 136 Hawai'i at 47, 358 P.3d at 19.  Phrased in other ways, an arbitrator must disclose facts that reasonably "create an impression of possible bias," <u>Commonwealth Coatings</u>, 393 U.S. at 149, or that demonstrate a "reasonable impression of partiality."  <u>Schmitz</u>, 20 F.3d at 1046 (citation omitted).

In addition to codifying the arbitrator's disclosure obligations, HRS § 658A-12(a) provides that "an arbitrator must make a reasonable inquiry before accepting appointment" as to any potential conflicts that must be disclosed.  Nordic, 136 Hawaiʻi at 45, 358 P.3d at 17.  In Nordic, we cited the Commentary to the Uniform Arbitration Act ("UAA") (2001) (hereinafter "Commentary") to further explain this standard.  The Commentary stated that the extent of an arbitrator's inquiry into potential conflicts "may depend upon the circumstances of the situation and the custom in a particular industry."  136 Hawaiʻi at 45, 358 P.3d at 17 (quoting Nat'l Conference of Comm'rs on Unif. State Laws, Uniform Arbitration Act (Last Revisions Completed Year 2000) 48 (Dec. 13, 2000), http://www.uniformlaws.org/shared/docs/arbitration/arbitration_final_00.pdf).

An arbitrator's duty to disclose "known facts" thus relates to facts already known or discovered upon reasonable inquiry.  "[W]hat constitutes a reasonable inquiry varies depending on the circumstances, and whether the duty of reasonable inquiry has been violated is a question of fact."  Nordic, 136 Hawaiʻi at 45, 358 P.3d at 17.  If an arbitrator violates the duty of reasonable inquiry and thus fails to acquire "known" facts that would otherwise need to be disclosed, such would result in the

21

same outcome as when an arbitrator knows such facts but fails to disclose them.  Thus, an arbitrator's lack of knowledge of specific facts is only a defense for nondisclosure if the arbitrator had conducted a reasonable inquiry.

In Nordic, construing prior case law, we determined that a neutral arbitrator's violation of statutory disclosure requirements under HRS § 658A-12(a) or (b) "constitutes 'evident partiality' as a matter of law."  136 Hawai'i at 50, 358 P.3d at 22.  We rejected the notion that after determining that an arbitrator failed to meet disclosure obligations, "there must also be a separate finding that the arbitrator acted with 'evident partiality' or bias before an award can be vacated." Id.  We do not require a separate finding regarding actual bias because our case law recognizes evident partiality not only "when there is actual bias on the part of the arbitrator, but also when undisclosed facts demonstrate a 'reasonable impression of partiality.'"  136 Hawai'i at 51, 358 P.3d at 23 (quoting Daiichi, 103 Hawai'i at 339-40, 82 P.3d at 425-26).

Since HRS § 658A-12 "explicitly adopted a requirement to disclose facts a reasonable person would find likely to affect an arbitrator's impartiality," and evident partiality under HRS § 658A-23 exists "when undisclosed facts demonstrate a reasonable impression of partiality," we found that a failure to

22

meet the disclosure obligations under § 658A-12 constituted "evident partiality" as a matter of law under § 658A-23(a)(2). Nordic, 136 Hawaiʻi at 51, 358 P.3d at 23.[13]

In Madamba, we held that a finding of evident partiality based on a violation of HRS § 658A-12(a) or (b) by a neutral arbitrator requires the court to vacate the arbitration award pursuant to HRS § 658A-23(a)(2)(A). 137 Hawaiʻi at 16, 364 P.3d at 533. We recognized the permissive language of HRS § 658A-12(d) but found the following:

> The function of the 'may' language . . . is to provide reference to the different circumstances that require vacatur under HRS § 658A-23(a)(2), i.e., a neutral arbitrator's evident partiality, and any arbitrator's corruption or misconduct. For example, if a non-neutral arbitrator fails to make a disclosure required under HRS § 658A-12(a) or (b), although the award would not be vacated based on evident partiality — as evident partiality only applies to neutral arbitrators — it could be vacated based on the corruption and misconduct provisions in HRS § 658A-23(a)(2).

---

[13]    Compare HRS § 658A-12(e), which provides that "[a]n arbitrator appointed as a neutral arbitrator who does not disclose a known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party is presumed to act with evident partiality under section 658A-23(b)(2)." In Nordic, we did not hold that non-disclosure of facts a reasonable person would find likely to affect an arbitrator's impartiality would require immediate vacatur of the arbitration award. We cited HRS § 658A-12(d), which provides that "[i]f the arbitrator did not disclose a fact as required by subsection (a) or (b), upon timely objection by a party, the court under section 658A-23(a)(2) may vacate an award." 136 Hawaiʻi at 53, 358 P.3d at 25 (emphasis in original). This standard was viewed as being "permissive in nature" and granting courts "wider latitude in deciding whether to vacate an award" for failure to meet the disclosure requirements. Id. (citing Commentary, supra, at 50). We thus stated that the circuit court "has discretion under HRS § 658A-12(d) to decide whether or not to grant the motion to vacate." Id. Our opinion in Madamba clarified this on the basis of statutory language in HRS § 658A-23(a)(2) as applied to an arbitrator appointed as a neutral arbitrator. Madamba, 137 Hawaiʻi at 16, 364 P.3d at 533.

Id. (citation and footnote omitted).  We also noted that the Commentary "takes into account the fact that jurisdictions have developed different views regarding what constitutes evident partiality," so the standard for evident partiality due to nondisclosure will differ among jurisdictions that have adopted the UAA.  137 Hawai'i at 16 n.20, 364 P.3d at 533 n.20.  "[O]ur standard for evident partiality based on a failure to disclose is equivalent to the standard laid out in HRS § 658A-12's disclosure provisions.  Accordingly, in this context, once evident partiality [as to a neutral arbitrator] is established, the arbitration award must be vacated."  Id.

Based on the standards outlined in Nordic and clarified in Madamba, an arbitrator's compliance with the disclosure requirements set forth in §§ 658A-12(a) and (b) is paramount to the validity of an arbitration award.  See Kay v. Kaiser Found. Health Plan, Inc., 119 Hawai'i 219, 229, 194 P.3d 1181, 1191 (App. 2008) (framing the disclosure obligation as "the sine qua non" of our review).  In this case, we clarify the scope of the arbitrator's disclosure requirements as well as contextualize the reasonable person standard in light of the undisclosed facts revealed through post-award discovery.

## B.  Framework for Evaluating Nondisclosure Claims

As established in Nordic, an arbitrator's failure to disclose facts as required under HRS § 658A-12(a) or (b)

24

constitutes evident partiality as a matter of law, and pursuant to Madamba, the circuit court does not have discretion to determine whether to vacate an award once evident partiality is established as to a neutral arbitrator.  However, the circuit court plays an essential fact-finding role in determining whether the party challenging the award has met its "burden of proving facts which would establish a reasonable impression of partiality," Nordic, 136 Hawaiʻi at 51, 358 P.3d at 24, which constitutes "evident partiality."  The "fundamental standard" of the disclosure obligation "is an objective one: disclosure is required of facts that a reasonable person would consider likely to affect the arbitrator's impartiality in the arbitration proceeding."  136 Hawaiʻi at 47, 358 P.3d at 19 (quoting Commentary at 47-48).  It is thus the circuit court's role to determine whether the undisclosed facts meet this objective standard.

Although we do not venture to pre-determine a set of relationships that will automatically require disclosure, we recognize that patterns have emerged.  Such patterns may be traced to the United States Supreme Court's seminal decision in Commonwealth Coatings, 393 U.S. 145.  In that case, a party to the arbitration was one of the arbitrator's long-time customers in his construction consulting business.  393 U.S. at 146.  The Court found that this business relationship required disclosure,

25

and that its nondisclosure constituted evident partiality warranting vacatur of the arbitration award.  393 U.S. at 150.

Justice White and Justice Marshall concurred in the judgment but clarified that "arbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial."  393 U.S. at 150 (White, J., concurring).  Although other jurisdictions have interpreted it otherwise, Justice White's concurrence did not contradict or limit the principle adopted by the Court that a failure to fulfill disclosure obligations would result in a finding of evident partiality warranting vacatur.  See Schmitz, 20 F.3d at 1045.  Justice White's concurrence thus did not reject the majority's evident partiality standard, but clarified its parameters — namely, that "more than trivial" relationships "must be disclosed."  Commonwealth Coatings, 393 U.S. at 152. This standard is aligned with HRS § 658A-12(a), which does not require the disclosure of de minimis interests or relationships, see Nordic, 136 Hawaiʻi at 47, 358 P.3d at 19 (quoting Commentary at 47-48), and Ninth Circuit case law, which does not require the disclosure of "long past, attenuated, or insubstantial connections between a party and an arbitrator."  New Regency

Prods., Inc. v. Nippon Herald Films, Inc., 501 F.3d 1101, 1110 (9th Cir. 2007).[14]

Patterns emerging in case law have evolved through court efforts to identify undisclosed relationships that are "more than trivial" and thus require vacatur due to evident partiality, and those that are "too insubstantial to warrant vacating an award."  Commonwealth Coatings, 393 U.S. at 152 (White, J., concurring) (emphasis added).  Courts will weigh factors in a case-by-case approach to determine how a reasonable person would objectively perceive the relationship and its potential impact on the arbitration proceeding.  In Madamba, for

---

[14]   We note that there is a split of opinion regarding the meaning and the weight of Justice White's concurrence in Commonwealth Coatings, where many jurisdictions characterize Justice Black's majority opinion as a "plurality opinion" and see a conflict between this opinion and Justice White's concurrence.  See, e.g., Nationwide Mut. Ins. Co. v. Home Ins. Co., 429 F.3d 640, 644 n.5 (6th Cir. 2005) (stating that "a majority of" the Commonwealth Coatings Court "did not endorse the 'appearance of bias' standard set forth in the plurality opinion"); Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds, 748 F.2d 79, 83 n.3 (2d Cir. 1984) (stating that the two opinions are "impossible to reconcile").  We disagree with this characterization of Justice White's concurring opinion.  Justice White, joined by Justice Marshall, specifically stated that he was "glad to join" the Court's "majority opinion" and sought only to make "additional remarks." Commonwealth Coatings, 393 U.S. at 150, 151 n.* (White, J., concurring). "Among these additional remarks, Justice White said that arbitrators are not held to the partiality standard applicable to judges and that 'trivial' or 'remote' relationships need not be disclosed."  Schmitz, 20 F.3d at 1045. Justice White's concurrence does not mention the "appearance of bias" standard or imply that it is inappropriate, and both opinions emphasize the need for an arbitrator's full disclosure.  Commonwealth Coatings, 393 U.S. at 151.  Thus, Justice White did not reject the majority's standard, but more specifically defined the parameters of the disclosure requirement.  We stated in Madamba that we follow "Justice Black's reasoning," in contrast with courts that apply "a more stringent definition of evident partiality" based on Justice White's concurrence.  137 Hawai'i at 10 n.15, 364 P.3d at 527 n.15. We clarify here that our adoption of "Justice Black's reasoning" does not mean we must reject Justice White's concurrence, as we interpret the concurrence as complementary to, rather than conflicting with, the majority opinion.

27

example, this court analyzed the "substantive nature" of the relationship at issue to determine whether it would give a reasonable impression of partiality.  137 Hawaiʻi at 13, 364 P.3d at 530.  See also In Re Sussex, 781 F.3d 1065, 1074-75 (9th Cir. 2015) (discussing the "substantive" nature of the arbitrator's interest).  Determining whether a relationship is "substantive" may involve the consideration of several factors, including but not limited to the directness of the connection (or the degrees of separation) between the arbitrator and either party, as well as the type of connection or activity at issue, and its timing relative to the arbitration proceedings.

1.   **Connection between the Arbitrator and a Party**

As a threshold matter, any analysis of arbitrator disclosure requirements is undergirded by the timing issues further expounded in subsection (3) below.  This is a necessary corollary consideration of the requirement that the undisclosed relationship between the arbitrator and a party be one that a reasonable person would consider likely to affect the arbitrator's impartiality.  The more direct an undisclosed connection between the arbitrator and a party, the more likely that it will create a reasonable impression of partiality.  As such, a current direct relationship between an arbitrator and "a party, its counsel, principal, or agent" will almost always require disclosure.  Valrose, 105 F. Supp. 2d at 1124.

28

For example, in Valrose, the United States District Court for the District of Hawaiʻi vacated an arbitration award where the arbitrator failed to disclose an ex parte discussion with one of the party's counsel about serving as a mediator in an unrelated case.  105 F. Supp. 2d at 1120, 1125.  Given the arbitrator's direct interaction with a party attorney about a matter that would result in a pecuniary benefit to the arbitrator, the court found that the nondisclosure of this discussion — and nondisclosure of the arbitrator's eventual appointment as a mediator in the matter — "was clearly a serious failing" and required vacatur of the award.  105 F. Supp. 2d at 1124.

Disclosure is also typically required when there is a recent or current relationship between an arbitrator's law firm or business and a party, its counsel, principal, or agent.  See, e.g., New Regency, 501 F.3d 1101 (vacating an arbitration award where the arbitrator, who was an executive for a film company, did not disclose that her company was in negotiations with an executive of one of the parties to finance and co-produce a movie); Schmitz, 20 F.3d 1043 (vacating an arbitration award where the arbitrator did not disclose that his law firm represented the parent corporation of a party).  Disclosure may also be required even when it is the arbitrator's employer that has the relationship.  See Olson v. Merrill Lynch, Pierce,

Fenner & Smith, Inc., 51 F.3d 157 (8th Cir. 1995) (vacating an award where an arbitrator disclosed that he was an employee of a company, but did not disclose his high-ranking position or the fact that the company had an ongoing business relationship with one of the parties).

The more "attenuated" and less direct the connections between a party and an arbitrator, the less likely it will be that the relationship will require disclosure, even if those relationships are current. New Regency, 501 F.3d at 1110. In United States Wrestling Fed'n v. Wrestling Div. of AAU, Inc., a party sought vacatur because an arbitrator did not disclose that his law firm had a relationship with Northwestern University. 605 F.2d 313, 315-16 (7th Cir. 1979). Northwestern was neither a party to the arbitration nor directly related to one of the parties, but instead was one of the 860 other members of the NCAA, a founder of one of the parties to the arbitration. 605 F.2d at 315. This "tenuous chain" was too "remote, uncertain, and speculative to require the arbitration award to be set aside." 605 F.2d at 320.

## 2. Type of Connection or Activity

Certain types of relationships will also weigh more heavily toward disclosure than others. In Madamba, we recognized that attorney-client relationships carry "heightened import." 137 Hawaiʻi at 14, 364 P.3d at 531. Such recent, current, or

prospective relationships will almost always require disclosure. See id. (requiring disclosure of an arbitrator's prospective attorney-client relationship with one of the party counsel's law firms, despite the fact that the arbitrator did not plan to interact with the firm "besides paying legal bills"); Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp., 751 A.2d 426, 431 (Del. Ch. 1999) (requiring disclosure of an attorney-client relationship between the arbitrator and the law firm representing a party); Schmitz, 20 F.3d at 1049 (requiring disclosure of an attorney-client relationship between the arbitrator's law firm and a party's parent company); HSMV Corp v. ADI Ltd., 72 F. Supp. 2d 1122, 1130 (C.D. Cal. 1999) (requiring disclosure of an attorney-client relationship between an arbitrator's law firm and a party's owner); Houston Vill. Builders, Inc. v. Falbaum, 105 S.W.3d 28, 34 (Tex. App. 2003) (requiring disclosure of an attorney-client relationship between the arbitrator and a trade association of which parties to the arbitration were members); but see Peabody v. Rotan Mosle, Inc., 677 F. Supp. 1135, 1138 (M.D. Fla. 1987) (not requiring disclosure of attorney-client relationship between the arbitrator's former law partner's brother and an expert witness, as this relationship was "thrice removed" from the arbitrator and thus too attenuated).

Business relationships and financial dealings will also tend to weigh in favor of disclosure, depending on the weight of other considerations, including the regularity and recency of the dealings, the length of the relationship, and the extent of pecuniary interest involved.  The best-known example of the kind of business relationship requiring disclosure is in the seminal case, Commonwealth Coatings, 393 U.S. 145.  As noted in this case, a party to the arbitration was one of the arbitrator's regular customers in his construction consulting business.  In weighing the import of this relationship, the Court acknowledged that it was "in a sense sporadic in that the arbitrator's services were used only from time to time at irregular intervals," and that "there had been no dealings between them for about a year immediately preceding the arbitration."  393 U.S. at 146.  "Nevertheless, the [party's] patronage was repeated and significant, involving fees of about $12,000[15] over a period of four or five years," and it involved "the rendering of services on the very projects involved in this lawsuit."  Id.  The Court found that these dealings "might create an impression of possible bias" and would thus require disclosure.  393 U.S. at 149.

Where the relationship involves an exchange of money or other consideration, it is likely to require disclosure,

---

[15]    Adjusted for inflation, this would amount to over $85,000 today.

particularly if the exchange was recent or ongoing during the arbitration.  See, e.g., Britz, Inc. v. Alfa-Laval Food & Dairy Co., 40 Cal. Rptr. 2d 700, 707 (Cal. App. 1995).  In Britz, the arbitrator failed to disclose that he was employed by one of the party counsel's law firms as an expert witness in a separate matter.  Id.  Nondisclosure of this fact was sufficient to warrant vacatur for evident partiality, as it established "a current monetary connection."  Id.  Similar circumstances were present in Wheeler v. St. Joseph Hosp., where the court vacated an award because an arbitrator failed to disclose that he served as an expert witness for a party attorney's law firm during the pendency of the arbitration.  133 Cal. Rptr. 775 (Cal. App. 1976).

Even if the relationship does not involve financial benefits flowing to the arbitrator, certain exchanges could nonetheless be reasonably perceived as a means for one party to gain favor.  In Kay, the arbitrator did not disclose that she had directly solicited and received a $450 donation from one of the parties on behalf of a non-profit medical association during the pendency of the arbitration.  119 Hawaiʻi 219, 194 P.3d 1181. The ICA noted that there was no evidence that the arbitrator received a direct financial benefit from her work, but that it was "a significant professional activity that brought her public recognition and enhanced her reputation in the medical

profession."   119 Hawai'i at 229-30, 194 P.3d at 1191-92.   The
ICA thus held that the arbitrator needed to disclose that she
solicited and received money from the party during the
arbitration, regardless of the charitable purposes of her
activities.   119 Hawai'i at 230, 194 P.3d at 1192.

In accord with this principle, a relationship is less
likely to create a reasonable impression of partiality if it was
one in which "[t]here was nothing that one could do to curry
favor with the other."   Apusento Garden (Guam) Inc. v. Superior
Court of Guam, 94 F.3d 1346, 1352 (9th Cir. 1996) (quoting
Lozano v. Maryland Cas. Co., 850 F.2d 1470 (11th Cir. 1988),
cert. denied, 489 U.S. 1018 (1989)).   In Apusento, for example,
the arbitrator and a party's expert witness were limited
partners in a partnership that owned an apartment complex in
Hawai'i.   94 F.3d at 1348.   The court characterized the
arbitrator and expert witness as "passive investors in a limited
partnership" which "was unrelated to the subject of the
arbitration."   94 F.3d at 1353.   According to the court, this
type of financial relationship did not require disclosure,
particularly because it was not the kind where either person
could "curry favor" with the other.   Id.

This situation was paralleled in Lozano, where a neutral
arbitrator and a party-appointed arbitrator were both investors

in two limited partnerships.  850 F.2d at 1471.  Although each partnership respectively consisted of seven and nine limited partners, neither the neutral arbitrator nor the party-appointed arbitrator had control over the partnership activities.  The court compared this financial relationship with "two individuals buying the same issue of corporate stock or investing in the same mutual fund" and did not require disclosure.  Id.[16]

### 3.  Timing of the Connection or Activity

Finally, as noted in the previous sections, relationships that are not "distant in time, but rather ongoing during the arbitration" will weigh most heavily in favor of disclosure, while relationships that are "long past" will not.  New Regency, 501 F.3d at 1110; see Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 646 (9th Cir. 2010) (rejecting the need for disclosure of a relationship between a neutral and party-appointed arbitrator where the connection "occurred more than a decade before the arbitration").

---

[16]    In some circumstances, personal and familial relationships may also be necessary to disclose.  In Morelite, one of the parties to the arbitration was a local union, and the arbitrator failed to disclose that his father was the vice-president of the international union to which the local union belonged.  748 F.2d at 81.  The court found that this relationship required disclosure based on its "strong feeling that sons are more often than not loyal to their fathers, partial to their fathers, and biased on behalf of their fathers."  748 F.2d at 84.  In other cases, however, familial relationships have not required disclosure.  See Ruhe v. Masimo Corp., 640 Fed. App'x 685 (9th Cir. 2016) (reversing a finding that a "reasonable impression of bias" existed where an arbitrator's brother represented a competitor to one of the parties and had suffered two contentious litigation losses to that party).

Prospective or future relationships will weigh in favor of disclosure where there is a "concrete possibility" of such a relationship.  Madamba, 137 Hawai'i at 12, 13, 364 P.3d at 529, 530 (citing Sussex, 781 F.3d at 1074).  Concrete possibilities of a future relationship have been demonstrated through evidence of negotiations, communications, or other facts showing that steps were taken to further the potential relationship during the course of the arbitration.  See Madamba, 137 Hawai'i at 15, 364 P.3d at 532 (noting that the party's law firm had received the arbitrator's files during the course of the arbitration); New Regency, 501 F.3d at 1110 (acknowledging that the negotiations were ongoing throughout the arbitration); Valrose, 105 F. Supp. 2d at 1124 (concerning discussions between the arbitrator and party counsel about mediating in an unrelated action).

Unless a party can show a "concrete possibility" of such a relationship occurring through direct evidence, allegations of future interests or relationships are often too contingent and speculative to require disclosure.  See Sussex, 781 F.3d at 1074-75.  In Sussex, the arbitrator did not disclose to the parties that he had started an investment firm for litigation financing.  Id.  One party seeking his removal successfully argued to the district court that this suggested that the arbitrator had a financial interest in the outcome, "because a

36

victory and large financial award for Sussex would help [the arbitrator] promote his company, which was designed to generate profits from funding large, potentially profitable litigations." 781 F.3d at 1070.  The Ninth Circuit rejected this "theory" based on its "speculative nature," noting that the arbitrator did not have a relationship with either party, and his potential ability to profit from the award "can best be described as 'attenuated' and 'insubstantial.'"  781 F.3d at 1074-75 (quoting New Regency, 501 F.3d at 1110).

C.   **Application of Disclosure Standards to This Case**

   1.   **The Arbitrator's Connection with Stellmacher**

We first analyze Appellants' contention that the circuit court erred in concluding that the Arbitrator did not need to disclose "ongoing or past instances in which she served as a neutral and . . . a non-attorney witness appeared before her in another matter."  Under the applicable standards of review, we hold that it was not clearly erroneous for the circuit court to find that the Arbitrator's connection with Stellmacher did not give a reasonable impression of partiality.

The mere fact that an arbitrator has observed a witness in a prior proceeding and therefore may have "had an opportunity to evaluate the person and form an opinion as to the person's credibility[,]" without more, is not a "relationship" that requires disclosure.  Thus, it was not clearly erroneous for the

circuit court to conclude that the Arbitrator's undisclosed "relationship" with Stellmacher did not constitute evident partiality.

### 2.    The Arbitrator's Connection with KSG

We next address Appellants' contention that the circuit court erred in concluding that the Arbitrator did not need to disclose "ongoing or past instances in which she served as a neutral and . . . attorney witnesses, one of whom appeared as an expert witness in the subject arbitration and the other of whom was a hearsay lay witness, retained her services on behalf of a client in other matters."  At the outset, we note that Appellants' claim of error focuses not on the Arbitrator's relationship with the alleged "hearsay witness," Smith, but Smith's law firm, KSG, which had retained the Arbitrator in other unrelated matters.[17]

Under the applicable standard of review, we hold that it was not clearly erroneous for the circuit court to conclude that the Arbitrator's relationship with KSG did not constitute evident partiality.  Appellants argued that the Arbitrator needed to disclose her relationship with KSG because:

---

[17]    As noted earlier, Smith's only connection to the arbitration was through Stellmacher's post-arbitration declaration summarizing his conversation with Smith regarding who had retained him in the Developer action, which confirmed that Stellmacher's assignment on behalf of the Developer had been terminated shortly after he visited the Property and that he had received no work product or other documents from Smith or KSG.  Smith was not a witness in the arbitration proceeding and it is unclear how Appellants' allegations make him a "hearsay witness."

> (1) KSG is representing certain of the original developer
> entities that are adverse to [Appellants] in the Developer
> Action; (2) the Arbitrator relied on Mr. Smith's[ —- a KSG
> attorney's -- ]hearsay testimony in rejecting [Appellants']
> request for Mr. Stellmacher's entire file. . . and (3)
> defendants in the Developer Action have continued to press
> for arbitration, appealing the Hawaiʻi Supreme Court's
> ruling that the arbitration clause is unenforceable to the
> United States Supreme Court.

Appellants claimed that the "most disconcerting" aspect of the Arbitrator's nondisclosures regarding KSG was the status of the Developer Action.  According to Appellants, "the Arbitrator's decision, had it been appropriately in [Appellants'] favor, may have had repercussions to KSG's client in the 'still ongoing' Developer Action inasmuch as [Appellants] here challenged the settlement agreement between KSG's clients and [the AOAO]."  According to Appellants, the relationship between the Arbitrator and KSG would allow a reasonable person to "infer that a defense verdict in this arbitration would help the Arbitrator to garner KSG's recommendation to serve in the Developer Action, should it be ordered to arbitration, i.e., that there is a 'reasonable impression of partiality.'"

The Arbitrator's employment by KSG in unrelated matters does not have a sufficient nexus to this arbitration to require a holding that the circuit court clearly erred.  There is no actual direct connection between KSG and the parties, counsel, witnesses, and Arbitrator in this arbitration.  In addition, KSG represents the Developer in the separate Developer Action, which is adverse to Appellants, but the theory that a positive outcome

39

for the AOAO would lead to a future appointment for the Arbitrator in the Developer Action is "contingent, attenuated, and merely potential."  Sussex, 781 F.3d at 1075.  The same could be said with respect to Appellants if the Arbitrator had ruled in their favor.

Under the facts presented, we hold that the circuit court did not clearly err in ruling that the Arbitrator's duty of disclosure did not include her retention by KSG in other matters.  Vacatur cannot be required "simply because an arbitrator failed to disclose a matter of some interest to a party."  Lagstein, 607 F.3d at 646.

### 3. The Arbitrator's Connection with Nerney

Finally, we address whether it was clearly erroneous for the circuit court to conclude that there was no reasonable impression of partiality arising from the Arbitrator's connections with Nerney, an expert witness in this arbitration who served as party counsel before the Arbitrator in an unrelated half-day mediation in 2015 and an unrelated arbitration in 2013.  Appellants argue that an objective observer may reasonably believe that the Arbitrator, seeing a potential for future business with Mr. Nerney as both an attorney and expert witness, may have been inclined to favor Mr. Nerney by ruling in the AOAO's favor and adopting Mr. Nerney's legal rationale.

40

Appellants argue that the Arbitrator's relationship with a witness must be disclosed, in part, because "these types of disclosures are no different than those asked of potential jurors in voir dire to determine potential biases."  The mere fact that Nerney, an expert witness in this case, had been an attorney in two cases where he appeared before the Arbitrator, without more, is not a "relationship" that creates a reasonable impression of partiality.  It was therefore not clearly erroneous for the circuit court to conclude that the Arbitrator's undisclosed contacts with Nerney did not give a reasonable impression of partiality.

## VI.  Conclusion

Because the circuit court did not clearly err in holding that the Arbitrator's undisclosed connections with Stellmacher, KSG, and Nerney did not constitute evident partiality, we affirm the circuit court's final judgment.

| | |
|---|---|
| Joachim P. Cox,<br>Robert K. Fricke, and<br>Kamala S. Haake<br>for appellants<br><br>Michele-Lynn E. Luke<br>for appellees | /s/ Mark E. Recktenwald<br><br>/s/ Sabrina S. McKenna<br><br>/s/ Richard W. Pollack<br><br>/s/ Michael D. Wilson<br><br>/s/ Edward H. Kubo, Jr. |

