**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000161**
**31-JAN-2022**
**08:07 AM**
**Dkt. 269 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---

ASSOCIATION OF APARTMENT OWNERS OF THE PALM VILLAS
AT MAUNA LANI RESORT, by and through its Board of
Directors, Claimant-Appellee/Cross-Appellee,
v.
CONSTRX, LTD., Respondent-Appellee/Cross-Appellant, and
KNOX HOVERSLAND ARCHITECTS, Respondent-Appellant/Cross-Appellee

NO. CAAP-17-0000161

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P. NO. 14-1-000564-12)

JANUARY 31, 2022

WADSWORTH, PRESIDING JUDGE, AND NAKASONE, J.,
AND McCULLEN, J., DISSENTING

OPINION OF THE COURT BY WADSWORTH, J.

This appeal arises out of a dispute concerning two arbitration awards, which were issued in favor of Respondent-Appellant/Cross-Appellee Knox Hoversland Architects, Ltd. (**KHA**) and Respondent-Appellee/Cross-Appellant ConstRX, Ltd. (**CRX**) (collectively, **Respondents**) and against Claimant-Appellee/Cross-Appellee Association of Apartment Owners of the Palm Villas at Mauna Lani Resort (**AOAO**).  KHA appeals and CRX cross-appeals from the April 3, 2017 Amended Findings of Fact, Conclusions of Law and Order (**Amended FOF/COL/Order**), entered in the Circuit Court

of the First Circuit[1] (**Circuit Court**), which: (1) granted AOAO's October 31, 2014 motion to vacate the September 16, 2014 Interim Arbitration Award (**Interim Award**); (2) granted AOAO's April 1, 2015 motion to vacate the February 9, 2015 Final Arbitration Award (**Final Award**); and (3) denied CRX's February 13, 2015 motion to confirm the Final Award, which KHA joined on March 10, 2015.

On appeal, Respondents contend that the Circuit Court erred in vacating the Interim Award and the Final Award (collectively, the **Arbitration Awards**) due to evident partiality. In particular, Respondents contend that the Circuit Court erred in concluding that: (1) the arbitrator, Judge Riki May Amano (Ret.) (the **Arbitrator or Judge Amano**), failed to make reasonable inquiries and failed to make full and appropriate disclosures of her relationships with the parties and counsel prior to and during the arbitration; and (2) AOAO did not waive its right to object to the Arbitrator.[2]

We hold that under the circumstances of this case, the Arbitrator's failure to timely disclose to the parties that she recently had been appointed as an arbitrator in another matter, involving an attorney who also had been involved in the present matter, could reasonably have been perceived as likely to affect the Arbitrator's impartiality in the arbitration underlying this appeal. Thus, the Circuit Court did not clearly err in ruling that a reasonable impression of partiality, and thus evident partiality, was established on this ground. We further hold that the Circuit Court did not clearly err in ruling that AOAO did not waive its right to challenge the Arbitrator on this ground. Accordingly, we affirm the Amended FOF/COL/Order.

## I. Background

The following findings of fact by the Circuit Court are unchallenged on appeal and are thus binding on the parties and

---

[1] The Honorable Jeannette H. Castagnetti presided.

[2] Respondents' respective points of error have been restated and condensed for organizational clarity.

this court, see State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019):

> 6. On April 18, 2012, [AOAO] and Respondents entered into a Remediation Agreement to complete [certain] repairs. . . .
>
> 7. Pursuant to Article 13 of the Remediation Agreement, any dispute arising thereunder that could not be resolved via the Initial Decision Maker (the Owner's/[AOAO's] Representative) or mediation was to be submitted to Dispute Prevention & Resolution, Inc. ("DPR") for binding arbitration. . . .
>
> 8. CRX performed remediation work from July 2012 to September 2013.
>
> 9. A dispute arose regarding payment under the Remediation Agreement.
>
> 10. On October 24, 2013, this matter came before Keith Hunter, President and Chief Executive Officer of DPR, for mediation.
>
> 11. Attorney [Jeffre W.] Juliano (O'Connor Playdon) could not attend the October 24, 2013 mediation and asked his partner, Cid Inouye, Esq., to prepare for and attend the mediation on Attorney Juliano's behalf [for CRX].
>
> 12. Attorney Inouye billed 11.3 hours in this matter to prepare for and stand in for Attorney Juliano at said mediation.
>
> 13. The mediation was unsuccessful and on October 28, 2013, [AOAO] emailed DPR its demand for arbitration against Respondents.
>
> 14. Also on October 28, 2013, CRX filed a demand for arbitration with DPR.
>
> 15. On November 14, 2013, using the strike-off method, DPR appointed Judge Amano to serve as arbitrator.
>
> . . . .
>
> . . . .
>
> 17. On November 18, 2013, Judge Amano, through Kelly Bryant, Case Manager at DPR, provided the following disclosure by email addressed to Attorneys [Terrance M.] Revere [(for AOAO)] and Juliano:
>
>> I know counsels Terry Revere, Cid Inouye and Jeff Juliano, and I have worked with other lawyers in their respective law firms, in my capacity as a former state court judge between 1992-2003 or in my post-retirement years as an arbitrator or mediator with DPR; I do not know Malia Nickison-Beazley.
>>
>> I have no other professional, social or personal interactions with anyone involved in this case.

> There are no relationships or interests, past or present that would affect my neutrality as an arbitrator in this case.

18. In the same email, Ms. Bryant advised that:

> The Judge has made a diligent effort to disclose all relevant matters. If any party has additional information that should be disclosed but has not been, or you have any comments or objections, please submit them in writing to DPR by **November 21, 2013.** (Emphasis in original.)

19. Ms. Bryant copied Attorney Inouye (O'Connor Playdon), Alison Shigekuni, Esq. (O'Connor Playdon), Mea Mitchell, Esq. (Revere & Associates), and Attorney Nickison-Beazley (Revere & Associates) on the November 18, 2013 email containing Judge Amano's initial disclosure.

20. No party submitted comment or objection to Judge Amano serving as arbitrator in response to her November 18, 2013 initial disclosure.

21. In January 2014, CRX's insurer retained Attorneys [Roy F.] Hughes and [Samantha] Storm of Hughes Storm to litigate CRX's defense claims, while Attorneys Juliano and [Lahela H.F.] Hite of O'Connor Playdon continued to litigate CRX's affirmative claims against [AOAO].

22. In February 2014, KHA's insurer retained Attorney [Randall K.] Schmitt of McCorriston Mukai to litigate its claims against [AOAO].

23. A summary of the parties and counsel who appeared before Judge Amano for the subject arbitration is as follows:

| | |
|---|---|
| [AOAO] | <u>Revere & Associates</u><br>Terrance Revere, Esq.<br>Malia Nickison-Beazley, Esq. |
| Respondent CRX | <u>O'Connor Playdon</u> (affirmative claims)<br>Lahela Hite, Esq.<br>Jeffre Juliano, Esq. |
| | <u>Hughes Storm</u> (defense claims)<br>Roy Hughes, Esq.<br>Samantha Storm, Esq. |
| Respondent KHA | <u>McCorriston Mukai</u><br>Randall Schmitt, Esq. |

. . . .

24. On March 25, 2014, Judge Amano issued the following supplemental disclosure by email through Ms. Bryant:

> I do not know nor have I had any affiliation past or present with [KHA.] I know counsel Randy Schmitt from my work as a former state court judge between 1992-2003 and/or in my post-retirment [sic] work as an arbitrator or mediator with DPR; I have also worked with other lawyers in his law firm, McCorriston Miller, in the capacities I have identified herein; I have no social or personal relationships with Mr.

4

> Schmitt or anyone in his law firm [sic]
> I am currently the Claims Administrator in a settled case in which Mr. Schmitt represented a named defendant; my present duties require me to seek and pay qualified class plaintiffs from settlement monies already paid; I do not have contact with Mr. Schmitt in this regard although he will be receiving a copy of my reports as the legal representative for a party to the case [sic]
> I have no other professional, social or personal relationships or interactions with anyone involved in this case [sic]
> I continue to believe that my neutrality as an arbitrator in this case is unaffected [sic]

25. No party submitted comment or objection to Judge Amano serving as arbitrator in response to her March 25, 2014 supplemental disclosure.

. . . .

28. On May 1, 2014, counsel for all the parties herein attended a pre-arbitration conference before Judge Amano at DPR's office.

29. At said pre-arbitration conference, Attorney Juliano disclosed that Attorneys Inouye and Maxwell K. Kopper (previously an associate at O'Connor Playdon) were before Judge Amano the day before, April 30, 2014, arguing an unrelated motion for summary judgment.

30. In said unrelated matter, unbeknownst to [AOAO], Ms. Bryant had confirmed on November 6, 2013, that Judge Amano was selected as the arbitrator, eight days before Judge Amano was selected as arbitrator in this matter.

31. There was no objection made at the May 1, 2014 pre-arbitration conference with respect to Judge Amano serving as arbitrator in this matter.

32. Beginning May 5, 2014, the arbitration took place at the office of McCorriston Mukai on May 5, 6, 7, 8, 9, and 12.

. . . .

35. On May 16, 2014, Ms. Bryant sent an email to Attorneys Hughes, Nickison-Beazley, Juliano, Revere, Mitchell, Shigekuni, Inouye, Schmitt, and Storm, among others who had not appeared before Judge Amano in this matter, to disclose that Judge Amano had been appointed by the court to serve as a discovery master in a matter in which Attorney Schmitt represented a party.

. . . .

. . . .

37. On September 16, 2014, Judge Amano issued an Interim Arbitration Award against [AOAO] and in favor of CRX for $205,539.49, representing the unpaid balance owed by [AOAO] and $431,462.47 in retainage, pursuant to the Remediation Agreement. Judge Amano denied CRX's remaining affirmative claims against [AOAO].

5

. . . .

39.  On September 23, 2014, Attorney Revere sent an email to Ms. Bryant, copying, among others, all counsel present at the May 2014 arbitration, representing that [AOAO] sought additional disclosures from Judge Amano pertaining to:

> [A]ny and all matters in which Judge Amano served as mediator, arbitrator or in any other capacity for any matters involving any of the parties or law firms retained in this matter in the last seven years, including dates when the retentions began and when they terminated.  We also ask that if there are any other personal or professional relationships involving any of the parties or lawyers in the law firms (not limited to just counsel that appeared in this matter) that they be disclosed.

40.  On September 23, 2014, in response to Attorney Revere's email, counsel emailed the following disclosures:

> [Disclosures by Schmitt and Storm not related to the disclosure at issue.]

41.  On September 24, 2014, Attorney Juliano (O'Connor Playdon) disclosed by email that his "last experience with Judge Amano was when she acted as a mediator in a case in which I represented one of the parties in October 2008.  I'm sure as Judge Amano has already disclosed, she has acted as a Judge, Mediator and or Arbitrator with other counsel in my office."

42.  On September 25, 2014, Attorney Juliano further disclosed by email the following matters in which Judge Amano was involved, and the O'Connor Playdon attorneys who handled them:

> **Mediations**
> . . . .
>
> 2014: Cid Inouye/Maxwell Kopper
>
> **Discovery Master**
> . . . .
>
> **Arbitration**
> 2010: Cid lnouye/Lahela Hite. . . .
>
> . . . .

43.  On September 29, 2014, [AOAO] filed with DPR a Motion to Disqualify Judge Amano and a Motion to Correct and/or Otherwise Modify Interim Arbitration Award, and submitted two subpoena duces tecum for Judge Amano's execution.

44.  On October 17, 2014, Mr. Hunter denied [AOAO]'s Motion to Disqualify Judge Amano.

45.  On October 21, 2014, Judge Amano provided the following supplemental disclosure by email through Ms. Bryant:

> . . . .

6

> • Cid Inouye was counsel in a case in which I was the selected arbitrator; the case began as an arbitration in late 2013 and turned into a mediation during the summer of 2014; the matter settled
>
> . . . .
>
> 46. Ms. Bryant further advised in the October 21, 2014 email that "[a]ny comments regarding this disclosure should be filed in writing with DPR by **October 23, 2014.**" (emphasis in original).
>
> . . . .
>
> 49. On October 21, 2014, Attorney Revere emailed [AOAO's] objection to Judge Amano's continued service as an arbitrator and moved a second time for Judge Amano's disqualification.
>
> 50. On October 29, 2014, Mr. Hunter denied [AOAO's] Second Motion to Disqualify.
>
> 51. On October 31, 2014, [AOAO] filed a Motion to Vacate Interim Arbitration Award in the Third Circuit Court.
>
> 52. On November 7, 2014, Judge Amano issued an Order Denying [AOAO's] Motion to Correct and/or Otherwise Modify Interim Arbitration Award, Dated September 16, 2014, and advised of her determination not to issue [AOAO's] previously submitted subpoenas.
>
> . . . .
>
> 54. On February 9, 2015, Judge Amano issued a Final Arbitration Award, which affirmed the amounts awarded to CRX under the Interim Arbitration Award: $205,539.49 for the unpaid balance owed by [AOAO], and $431,462.47 in retainage.
>
> 55. Judge Amano further awarded attorneys' fees and costs incurred by counsel for CRX and KHA as follows: $235,398.21 for Hughes Storm; $223,569.26 for O'Connor Playdon; and $163,019.32 for McCorriston Mukai.
>
> 56. On February 13, 2015, CRX filed the Motion to Confirm Final Arbitration Award Dated February 9, 2015, which KHA joined on March 10, 2015.
>
> 57. On April 1, 2015, [AOAO] filed the Motion to Vacate Final Arbitration Award.

(Record citations omitted; some brackets in original.)

On March 1, 2016, the Circuit Court held a status conference regarding the pending motions to vacate the Interim Award and the Final Award and the pending motion to confirm the Final Award, all of which had been consolidated for a hearing. At that time, "all counsel agreed that no evidentiary hearing would be necessary to dispose of the consolidated motions. . . ."

On August 17, 2016, the Circuit Court heard the consolidated motions.

7

On March 3, 2017, the Circuit Court issued its Findings of Fact, Conclusions of Law, and Order, which granted AOAO's motions to vacate the Interim Award and the Final Award, and denied Respondents' motion to confirm the Final Award. On April 3, 2017, the Circuit Court issued the Amended FOF/COL/Order.

The Circuit Court concluded that "the cumulative effect of undisclosed prior and ongoing relationships between Judge Amano and the Respondents' attorneys and their respective firms demonstrates a reasonable impression of partiality that warrants vacatur of the arbitration award." The Circuit Court further concluded, among other things:

> 30. The evidence supports this Court's conclusion that Judge Amano violated the disclosure requirements of [Hawaii Revised Statutes (**HRS**)] chapter 658A and DPR Rule 9 by failing to make reasonable inquiries of all past, current, and anticipated future relationships with the parties' attorneys or representatives, and by failing to disclose them, thus creating a reasonable impression of partiality.
>
> 31. In particular, Judge Amano did not disclose to the parties that she had been appointed as arbitrator in a matter involving O'Connor Playdon Attorneys Inouye and Kopper (formerly of O'Connor Playdon) on November 6, 2013, eight days before appointment in the underlying arbitration.
>
> . . . .
>
> 36. Under the circumstances, including the close proximity in time of Judge Amano's appointment as arbitrator, a reasonable person would consider the fact that on November 18, 2013, Judge Amano stated that she knew Attorney Inouye and worked with other lawyers in his firm yet did not disclose that he was involved in another matter where she was appointed arbitrator on November 6, 2013, creates an impression of possible bias.
>
> . . . .
>
> 42. This Court, therefore, concludes that [AOAO] has adequately established evident partiality by Judge Amano, a neutral arbitrator.
>
> 43. Consequently, the interim and final arbitration awards are hereby vacated pursuant to HRS § 658A-23(a)(2)(A).
>
> . . . .
>
> 48. This Court concludes that [AOAO] has not waived its right to challenge Judge Amano on the ground of evident partiality.
>
> 49. . . . [AOAO] has proffered sufficient evidence to support the contention that had Judge Amano disclosed that

she had been retained by O'Connor Playdon eight days before being appointed in the underlying arbitration, or had she disclosed the number of times she had been retained by the law firms representing Respondents, [AOAO] would not have agreed to her appointment.

This appeal and cross-appeal followed.

## II. Standards of Review

The Hawaiʻi Supreme Court has set out the applicable standards for judicial review of an arbitration award as follows:

Judicial review of an arbitration award is limited to the statutory grounds for confirmation, vacatur, modification, and correction. See HRS § 658A-28(a)(3)-(5) (Supp. 2001). Review of a motion to vacate an arbitration award "does not involve review of an arbitrator's findings of fact or conclusions of law." Nordic[ PCL Const., Inc. v. LPIHGC, LLC], 136 Hawaiʻi [29, ]42, 358 P.3d [1, ]14 [ (2015)]. "Rather, it involves review of a circuit court's factual findings and conclusions of law as to whether the statutorily outlined grounds for vacatur exist." Id.

We review a circuit court's findings of fact under the clearly erroneous standard. [Noel ]Madamba[ Contracting LLC v. Romero], 137 Hawaiʻi [1, ]8, 364 P.3d [518, ]525 [ (2015)]. . . . We review a circuit court's conclusions of law de novo under the right/wrong standard. Nordic, 136 Hawaiʻi at 41, 358 P.3d at 13 (quoting Daiichi[ Hawaiʻi Real Estate Corp. v. Lichter], 103 Hawaiʻi [325, ]336, 82 P.3d [411, ]422[ (2003)]). Where a conclusion of law presents a mixed question of law and fact, we review this conclusion under the clearly erroneous standard. Madamba, 137 Hawaiʻi at 8, 364 P.3d at 525 (citing Estate of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007)). A mixed question of law and fact is a conclusion "dependent upon the facts and circumstances of the particular case." Price v. Zoning Bd. of Appeals, 77 Hawaiʻi 168, 172, 883 P.2d 629, 633 (1994).

We review a circuit court's rulings on a motion to vacate for evident partiality under the "clearly erroneous standard" where the court's challenged conclusion was based on a "mixed question of law and fact." Madamba, 137 Hawaiʻi at 9, 364 P.3d at 526.

Narayan v. Ass'n of Apartment Owners of Kapalua Bay Condo., 140 Hawaiʻi 75, 83, 398 P.3d 664, 672 (2017).

## III. Discussion

## A. Evident Partiality and Failure to Make Necessary Disclosures

Respondents contend that the Circuit Court erred in vacating the Arbitration Awards due to evident partiality. Respondents argue, among other things, that the Arbitrator's disclosures to the parties were proper and timely. In response,

AOAO contends that the Circuit Court correctly found that the Arbitrator failed to make full and appropriate disclosures.

The supreme court has addressed an arbitrator's statutory disclosure requirements, as well as vacatur based on evident partiality, in a series of three decisions. See Narayan, 140 Hawaiʻi at 83-90, 398 P.3d at 672-79; Madamba, 137 Hawaiʻi at 9-16, 364 P.3d at 526-33; Nordic, 136 Hawaiʻi at 42-52, 358 P.3d at 14-24. In Narayan, the court stated:

> An arbitration award may be vacated only upon the grounds specified in HRS § 658A-23. Pursuant to HRS § 658A-23(a)(2)(A), the court must vacate an arbitration award if there was evident partiality by an arbitrator appointed to serve as a neutral. Madamba, 137 Hawaiʻi at 3, 364 P.3d at 520. Evident partiality may be found in two situations: when an arbitrator fails to make necessary disclosures to the parties, or when additional facts show actual bias or improper motive, even if the arbitrator makes the necessary disclosures. See Valrose Maui, Inc. v. Maclyn Morris, Inc., 105 F. Supp. 2d 1118, 1124 (D. Haw. 2000); see also Schmitz v. Zilveti, 20 F.3d 1043, 1045-47 (9th Cir. 1994) (distinguishing the evident partiality standards applied in "nondisclosure" cases and "actual bias" cases).

140 Hawaiʻi at 84, 398 P.3d at 673 (footnote omitted).

In a nondisclosure case, "evident partiality is established where 'undisclosed facts demonstrate a reasonable impression of partiality.'" Madamba, 137 Hawaiʻi at 10, 364 P.3d at 527 (quoting Nordic, 136 Hawaiʻi at 51, 358 P.3d at 23). "Under this standard, a finding of evident partiality 'is not dependent on a showing that the arbitrator was actually biased, but instead stems from the nondisclosure itself.'" Narayan, 140 Hawaiʻi at 84, 398 P.3d at 673 (quoting Madamba, 137 Hawaiʻi at 10, 364 P.3d at 527).

HRS § 658A-12 (Supp. 2013) codifies an arbitrator's duty to disclose facts that may create an appearance of bias. Section 658A-12 provides, in relevant part:

> (a) Before accepting appointment, an individual who is requested to serve as an arbitrator, after making a reasonable inquiry, shall disclose to all parties to the agreement to arbitrate and arbitration proceeding and to any other arbitrators any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding, including:
>
> (1) A financial or personal interest in the outcome of the arbitration proceeding; and

10

> > (2) An existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, a witness, or another arbitrator.
> >
> > (b) An arbitrator has a continuing obligation to disclose to all parties to the agreement to arbitrate and arbitration proceeding and to any other arbitrators any facts that the arbitrator learns after accepting appointment which a reasonable person would consider likely to affect the impartiality of the arbitrator.

Pursuant to these provisions, "arbitrators must at the outset disclose, then continually disclose throughout the course of an arbitration proceeding, any known facts that a reasonable person would consider likely to affect the arbitrator's impartiality." Nordic, 136 Hawai'i at 47, 358 P.3d at 19.

The supreme court has held that "a neutral arbitrator's violation of statutory disclosure requirements under HRS § 658A-12(a) or (b) 'constitutes "evident partiality" as a matter of law.'" Narayan, 140 Hawai'i at 85, 398 P.3d at 674 (quoting Nordic, 136 Hawai'i at 50, 358 P.3d at 22). In this context, "once evident partiality as to a neutral arbitrator is established, the arbitration award must be vacated." Id. at 86, 398 P.3d at 675 (brackets omitted) (quoting Madamba, 137 Hawai'i at 16 n.20, 364 P.3d at 533 n.20).

In Narayan, the supreme court "clarif[ied] the scope of the arbitrator's disclosure requirements as well as contextualize[d] the reasonable person standard in light of the undisclosed facts revealed through post-award discovery." Id. at 86, 398 P.3d at 675. "The 'fundamental standard' of the disclosure obligation 'is an objective one: disclosure is required of facts that a reasonable person would consider likely to affect the arbitrator's impartiality in the arbitration proceeding.'" Id. (quoting Nordic, 136 Hawai'i at 47, 358 P.3d at 19). "It is thus the circuit court's role to determine whether the undisclosed facts meet this objective standard." Id.

The supreme court also has observed:

> Patterns emerging in case law have evolved through court efforts to identify undisclosed relationships that are "more than trivial" and thus require vacatur due to evident partiality, and those that are "too insubstantial to warrant vacating an award." Commonwealth Coatings[ Corp. v.

11

> Continental Casualty Co.], 393 U.S. [145, ]152, 89 S. Ct.
> 337[, 340-41 (1968) ](White, J., concurring) (emphasis
> added).  Courts will weigh factors in a case-by-case
> approach to determine how a reasonable person would
> objectively perceive the relationship and its potential
> impact on the arbitration proceeding.

Id. at 87, 398 P.3d at 676.

Determining whether a relationship is "substantive"  – for the purpose of determining whether the relationship would give a reasonable impression of partiality – may involve the consideration of several factors, including:  (1) the directness of the connection between the arbitrator and a party; (2) the type of connection or activity at issue; and (3) the timing of the connection or activity.  See id.  Accordingly, in evaluating the disclosure issue in the present case, we analyze each of these factors below.

## 1.    Connection Between the Arbitrator and a Party

"The more direct an undisclosed connection between the arbitrator and a party, the more likely that it will create a reasonable impression of partiality."  Narayan, 140 Hawaiʻi at 88, 398 P.3d at 677.  Thus, "a current direct relationship between an arbitrator and 'a party, its counsel, principal, or agent' will almost always require disclosure."  Id. (quoting Valrose, 105 F. Supp. 2d at 1124).  In contrast, "[t]he more 'attenuated' and less direct the connections between a party and an arbitrator, the less likely it will be that the relationship will require disclosure, even if those relationships are current."  Id. (citing New Regency Prods., Inc. v. Nippon Herald Films, Inc., 501 F.3d 1101, 1110 (9th Cir. 2007)).

Here, on November 18, 2013, the Arbitrator disclosed to the parties:

> I know counsels Terry Revere, Cid Inouye and Jeff Juliano,
> and I have worked with other lawyers in their respective law
> firms, in my capacity as a former state court judge between
> 1992-2003 or in my post-retirement years as an arbitrator or
> mediator with DPR; I do not know Malia Nickison-Beazley.
>
> I have no other professional, social or personal
> interactions with anyone involved in this case.

However, the Arbitrator did not disclose to the parties that on November 6, 2013, she had been appointed as an arbitrator in an unrelated matter in which Attorneys Inouye and Kopper represented a party.

KHA argues that "the Arbitrator did not have a duty to disclose her relationship with Attorneys Inouye and Kopper because they did not participate in the arbitration proceedings." CRX makes a similar argument. Respondents are correct that under HRS § 658A-12(a)(2), supra, the term "counsel" "does not include all attorneys in the law firm of an attorney representing a party to an arbitration[.]" Madamba, 137 Hawaiʻi at 12 n.18, 364 P.3d at 529 n.18 (quoting Nordic, 136 Hawaiʻi at 48, 358 P.3d at 20). However, HRS § 658A-12(a) "requires that an arbitrator disclose facts that a reasonable person would consider likely to affect the arbitrator's impartiality." Id. (quoting Nordic, 136 Hawaiʻi at 48, 358 P.3d at 20). Thus, "[d]epending on the circumstances, such facts could include an arbitrator's relationships with other attorneys within a law firm of counsel representing a party to the arbitration." Id. (quoting Nordic, 136 Hawaiʻi at 48, 358 P.3d at 20).

Here, while Attorney Inouye did not represent CRX in the underlying arbitration itself, it is undisputed that he did prepare for and attend the October 24, 2013 mediation that immediately preceded the arbitration, on behalf of Attorney Juliano, representing CRX. It is similarly undisputed that Attorney Inouye billed CRX 11.3 hours for his work relating to the mediation. As the Circuit Court found, and Respondents do not dispute:

> Judge Amano was aware that Attorney Inouye had been involved in this matter, *albeit* he did not participate in the arbitration, when she specifically disclosed on November 18, 2013, that she knew "Terry Revere, Cid Inouye and Jeff Juliano" and had worked with other lawyers in Attorney Inouye's firm in her capacity as a former state court judge and as an arbitrator or mediator with DPR.

Additionally, the Circuit Court found, and Respondents do not dispute, that "the attorneys, DPR, and Judge Amano considered Attorney Inouye's involvement in this matter significant enough to copy him in email correspondence, in particular, those containing disclosures."

13

Under these circumstances, the then-current relationship between the Arbitrator and Attorney Inouye, who represented CRX in the mediation immediately preceding the underlying arbitration, was more direct than attenuated.  This factor thus weighed in favor of the Arbitrator disclosing that she recently had been appointed as an arbitrator in another matter involving O'Connor Playdon Attorney Inouye.

## 2. Type of Connection or Activity

The supreme court has recognized that "[c]ertain types of relationships will also weigh more heavily toward disclosure than others."  Narayan, 140 Hawaiʻi at 88, 398 P.3d at 677.  For example, "[b]usiness relationships and financial dealings will . . . tend to weigh in favor of disclosure, depending on the weight of other considerations, including the regularity and recency of the dealings, the length of the relationship, and the extent of pecuniary interest involved."  Id. at 89, 398 P.3d at 678.  Moreover, "[w]here the relationship involves an exchange of money or other consideration, it is likely to require disclosure, particularly if the exchange was recent or ongoing during the arbitration."  Id.

In Narayan, the supreme court held in part that the circuit court did not clearly err in ruling that the arbitrator's duty of disclosure did not include her retention in unrelated matters by the law firm of an alleged "hearsay witness."  Id. at 91, 398 P.3d at 680.  The court noted that the "hearsay witness" was not a witness in the arbitration proceeding at issue, and it "[wa]s unclear how Appellants' allegations make him a 'hearsay witness.'"  Id. at 91 n.17, 398 P.3d at 680 n.17.  In that context, the supreme court concluded:  "The [a]rbitrator's employment by [the law firm] in unrelated matters does not have a sufficient nexus to this arbitration to require a holding that the circuit court clearly erred.  There is no actual direct connection between [the law firm] and the parties, counsel,

14

witnesses, and [a]rbitrator in this arbitration."[3/]  Id. at 91, 398 P.3d at 680 (emphasis added).

Here, in contrast, there was a more direct connection between the Arbitrator and Attorney Inouye, who represented CRX in the mediation immediately preceding the underlying arbitration, and who was copied by the Arbitrator in email correspondence regarding the arbitration.  It was in this context that the Arbitrator was appointed as arbitrator in another matter involving O'Connor Playdon Attorney Inouye, just eight days before the Arbitrator's appointment in the underlying arbitration here.  Given the recency of the Arbitrator's appointment in the other matter, as well as the Circuit Court's other undisputed findings regarding the Arbitrator's relationship with Inouye, the Arbitrator's appointment in the other matter was the type of activity that could reasonably be perceived to affect an arbitrator's impartiality.[4/]  See Valrose, 105 F. Supp. 2d at 1123-24 (concluding that a "reasonable impression of partiality" existed where the arbitrator failed to disclose an ex parte discussion with one party's counsel regarding "the possibility of the Arbitrator's mediating in an unrelated legal malpractice action" and stating that the discussion "was clearly required to be disclosed" and "the nondisclosure of the discussion and appointment [as mediator] was clearly a serious failing").  This factor thus also weighed in favor of the Arbitrator disclosing that she recently had been appointed as an arbitrator in another matter involving O'Connor Playdon Attorney Inouye.

---

[3/]    The supreme court also recognized that the law firm was representing the developer in a separate action, which was adverse to the appellants, "but the theory that a positive outcome for the AOAO [i.e., the party adverse to the appellants in the arbitration at issue] would lead to a future appointment for the [a]rbitrator in the [separate action] is 'contingent, attenuated, and merely potential.'"  Narayan, 140 Hawaiʻi at 91, 398 P.3d at 680 (quoting In re Sussex, 781 F.3d 1065, 1075 (9th Cir. 2015).

[4/]    We do not mean to suggest there is any evidence in the record that Attorney Inouye acted with an improper motive or that the Arbitrator was actually biased by virtue of her appointment in the unrelated matter.  We have found none.  As previously discussed, however, a finding of evident partiality "is not dependent on a showing that the arbitrator was actually biased," but stems from the nondisclosure itself.  Narayan, 140 Hawaiʻi at 84, 398 P.3d at 673 (quoting Madamba, 137 Hawaiʻi at 10, 364 P.3d at 527).

### 3. Timing of the Connection or Activity

"[R]elationships that are not 'distant in time, but rather ongoing during the arbitration' will weigh most heavily in favor of disclosure, while relationships that are 'long past' will not." Narayan, 140 Hawaiʻi at 90, 398 P.3d at 679 (quoting New Regency, 501 F.3d at 1110, and citing Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 646 (9th Cir. 2010)).

Here, as noted above, the Circuit Court found, and Respondents do not dispute, that "[the Arbitrator] did not disclose to the parties that she had been appointed as arbitrator in a matter involving O'Connor Playdon Attorneys Inouye and Kopper (formerly of O'Connor Playdon) on November 6, 2013, eight days before appointment in the underlying arbitration." Thus, the recency of the Arbitrator's appointment in the other matter, and its ongoing nature during the underlying arbitration here, "weigh[ed] most heavily in favor of disclosure[.]" Narayan, 140 Hawaiʻi at 90, 398 P.3d at 679.

### 4. Weighing All of the Relevant Factors

We have observed that "[t]he judiciary should play a minimal role in reviewing impartiality. However, the sine qua non for minimal review must be the arbitrator's fidelity to the disclosure obligation." Kay v. Kaiser Found. Health Plan, Inc., 119 Hawaiʻi 219, 229, 194 P.3d 1181, 1191 (App. 2008).

Here, as discussed above, the direct relationship between the Arbitrator and Attorney Inouye, the type of activity at issue – *i.e.*, the Arbitrator's recent appointment in another matter involving O'Connor Playdon Attorney Inouye – and the close proximity in time between that activity and the underlying arbitration proceeding here, all weighed in favor of disclosure. Under these circumstances, we conclude that the Arbitrator's failure to timely disclose to the parties that she recently had been appointed as an arbitrator in another matter involving O'Connor Playdon Attorney Inouye could reasonably have been perceived as likely to affect the Arbitrator's impartiality in the underlying arbitration. Accordingly, on this record, the

16

Circuit Court did not clearly err in ruling that a reasonable impression of partiality, and thus evident partiality, was established on this basis.  Relatedly, the Circuit Court did not err in vacating the Arbitration Awards on this basis.[5/]

## B. Waiver of Objections

Respondents argue that even if AOAO's objections to the Arbitrator were properly supported by law, the belated nature of the objections constitutes a waiver.

The supreme court has summarized the waiver principle in the arbitration context as follows:

> HRS § 658A-12(d) provides "[i]f the arbitrator did not disclose a fact as required by subsection (a) or (b), upon timely objection by a party, the court under section 658A-23(a)(2) may vacate an award."  In addition, a party who has actual or constructive knowledge of a relationship of the arbitrator requiring disclosure but "fails to raise a claim of partiality . . . prior to or during the arbitration proceeding is deemed to have waived the right to challenge the decision based on 'evident partiality.'"  Daiichi, 103 Hawai'i at 345–46, 82 P.3d at 431–32 ("In the arbitration context, waiver has been defined as consisting of knowledge, actual or constructive, in the complaining party of the tainted relationship or interest of the arbitrator and the failure to act on that knowledge.") (internal quotation marks and citations omitted).
>
> . . . "[T]he question [of] whether a valid waiver exists is generally a question of fact, [however] 'when the facts are undisputed it may become a question of law.'"  103 Hawai'i at 346 n. 17, 82 P.3d at 432 n. 17 (quoting Hawaiian Homes Comm'n v. Bush, 43 Haw. 281, 286 (Terr. 1959)).

Nordic, 136 Hawai'i at 52, 358 P.3d at 24.

Here, we initially note that AOAO first raised objections to the Arbitrator while the underlying arbitration proceeding was still pending, albeit after the Interim Award was issued.  Prior to issuance of the Final Award, AOAO sought additional disclosures from the Arbitrator, and filed with DPR a motion to disqualify the Arbitrator and a motion to correct or

---

[5/]    Given our conclusion, we do not address Respondents' argument that the Circuit Court erred in ruling that the Arbitrator "violated the disclosure requirements of HRS chapter 658A and DPR Rule 9 by failing to make reasonable inquiries to all past, current, and anticipated future relationships with the parties' attorneys or representatives. . . ."  For the same reason, we do not reach Respondents' argument that the Circuit Court erred in ruling that "the cumulative effect" of undisclosed relationships between the Arbitrator and the Respondents' attorneys and their respective firms demonstrated a reasonable impression of partiality.

otherwise modify the Interim Award. Both motions were denied. AOAO filed with DPR a second motion to disqualify the Arbitrator, which was also denied. AOAO then filed the October 31, 2014 motion to vacate the Interim Award in the Circuit Court, which initiated the special proceeding underlying this appeal. When the Final Award was issued, AOAO moved to vacate it as well. Cf. Daiichi, 103 Hawaiʻi at 348, 82 P.3d at 434 (ruling that, "inasmuch as Daiichi had actual knowledge of [the arbitrator's] prior attorney-client relationship with [the adverse-party trustees], Daiichi, by failing to raise an objection to [the arbitrator's] appointment as an arbitrator prior to or during the arbitration proceeding, waived its right to challenge the propriety of the arbitration decision on grounds of 'evident partiality'").

Respondents contend, however, that AOAO took a "wait-and-see" approach to challenging the arbitration decision. Daiichi, 103 Hawaiʻi at 348, 82 P.3d at 434. Respondents argue that the Arbitrator's initial disclosures, as well as a statement made by CRX's counsel, Attorney Juliano, at the pre-arbitration conference, were sufficient, and should have at least triggered a duty of inquiry or investigation by AOAO into the Arbitrator's disclosed relationships.

Regarding the Arbitrator's initial disclosures, the Circuit Court found that on November 18, 2013, the Arbitrator stated, in relevant part:

> I know counsels Terry Revere, Cid Inouye and Jeff Juliano, and I have worked with other lawyers in their respective law firms, in my capacity as a former state court judge between 1992-2003 or in my post-retirement years as an arbitrator or mediator with DPR[.]

Regarding Juliano's statement, the Circuit Court made the following findings of fact:

> 28. On May 1 , 2014, counsel for all the parties herein attended a pre-arbitration conference before Judge Amano at DPR's office.
>
> 29. At said pre-arbitration conference, Attorney Juliano disclosed that Attorneys Inouye and Maxwell K. Kopper (previously an associate at O'Connor Playdon) were before Judge Amano the day before, April 30, 2014, arguing an unrelated motion for summary judgment.

18

30.  In said unrelated matter, unbeknownst to [AOAO], Ms. Bryant had confirmed on November 6, 2013, that Judge Amano was selected as the arbitrator, eight days before Judge Amano was selected as arbitrator in this matter.

31.  There was no objection made at the May 1, 2014 pre-arbitration conference with respect to Judge Amano serving as arbitrator in this matter.

These unchallenged findings are binding on appeal.  See Rodrigues, 145 Hawaiʻi at 494, 454 P.3d at 435.  AOAO argues, however, that "an alleged oral anecdote by counsel is simply not a disclosure by an arbitrator."  AOAO also maintains:

HRS § 658A-12 is very clear that disclosures are to be made by the arbitrator after making a reasonable inquiry, not the parties.  Moreover, there is nothing in Judge Amano's November 2013 disclosure that would have prompted the AOAO to inquire as to 2 pending arbitrations that were not disclosed until after the Interim Award was issued[.]

As to the Arbitrator's initial disclosures, we conclude that her statement, "I know counsel[] . . . Inouye[,]" was general, and did not provide AOAO with actual or constructive notice that she recently had been appointed as an arbitrator in another matter involving Attorney Inouye.  The Arbitrator's statement, "I have worked with other lawyers in their respective law firms," was also general, and in context conveyed a completed action or relationship.  The statement did not provide actual or constructive notice of the Arbitrator's current role as an arbitrator in another matter involving Attorney Inouye.  See Burlington N.R. Co. v. TUCO Inc., 960 S.W.2d 629, 638 (Tex. 1997) (vacating an arbitration award for evident partiality where a neutral arbitrator initially disclosed past ties to one party's law firm but failed to disclose a post-selection referral by that party's appointed arbitrator for other arbitration work and noting that "a person might reasonably differentiate between a past relationship and one that arises shortly before or during the arbitration proceedings.").

Based on FOFs 29 and 30, we further conclude that Attorney Juliano's May 1, 2014 statement at the pre-arbitration conference did not provide AOAO with actual or constructive knowledge of the Arbitrator's November 6, 2013 appointment in another arbitration matter involving Attorney Inouye.  FOF 29

19

cites Paragraph 5 of Attorney Juliano's October 7, 2014
declaration, in which he described his May 1, 2014 statement as
follows:

> At this final Pre-Arbitration Conference, I specifically
> brought up with Judge Amano in front of all counsel the fact
> that my partner, Mr. Inouye, and associate, Mr. Kopper, were
> before her the day prior on April 30, 2014 arguing their MSJ
> in the other unrelated arbitration.  In particular, I
> inquired as to whether Mr. Kopper argued the motion.[6]

(Footnote added.)  Thus, Attorney Juliano's oral statement was
not directed to AOAO's counsel and did not disclose the recent
appointment of the Arbitrator in the other, unspecified matter
involving Attorney Inouye.  Morever, on this record, the oral
statement was insufficient to provide AOAO with constructive
knowledge of the recent appointment.  Cf. Daiichi, 103 Hawaiʻi at
348, 82 P.3d at 434 (concluding that Daiichi had constructive
knowledge of a letter written by the arbitrator which was
contained in Daiichi's own files).  We note, for example, there
was no finding by the Circuit Court that AOAO's counsel actually
heard Attorney Juliano's oral statement in the context (see supra
note 6) in which it was made.[7]  In this regard, we also note that
Respondents could have requested an evidentiary hearing regarding

---

[6]     During the December 16, 2015 hearing before the Circuit Court,
Attorney Juliano further explained:

> It's a statement that I made . . . that at a pre-arb
> conference, we discussed the one case with Cid Inouye and
> Max [K]opper in my office, because Max has a very deep
> voice, and we were discussing with Judge Amano in the
> presence of Terry [Revere] and another counsel, Max's deep
> voice, and how he'll probably make a good litigator.  That
> raised the fact that that case was there.

[7]     During the December 16, 2015 hearing before the Circuit Court,
AOAO's counsel, Attorney Revere, stated:

> Mr. Juliano asserted, . . . I made some reference in, I
> believe it was a phone call precall hearing that should have
> indicated to Revere that Judge Amano, we were using her in
> other matters.
>
>      Again, I won't say that's not true. It could have
> happened before I got in the room. It could have happened
> some other time, but I'm telling you, I never heard that,
> and so they're using that as, well, they knew.  That's
> another fact that's in dispute, because we didn't know.  We
> had no idea until after the arbitration, when the law firm
> started making disclosures, and then eventually Judge Amano
> made disclosures.

20

AOAO's claim of evident partiality, as well as Respondents' waiver assertion.  The Circuit Court made clear, however, that "all counsel agreed that no evidentiary hearing would be necessary to dispose of the consolidated motions[.]"  On this record, we conclude that the Circuit Court did not clearly err in ruling that AOAO did not waive its right to challenge the Arbitrator on the ground of evident partiality, based on the Arbitrator's November 6, 2013 appointment in the other matter involving Attorney Inouye.

### IV. Conclusion

For the reasons discussed above, we affirm the Amended Findings of Fact, Conclusions of Law and Order, entered on April 3, 2017, in the Circuit Court of the First Circuit, on the ground specified in this Opinion.

/s/ Clyde J. Wadsworth
Presiding Judge

On the briefs:

/s/ Karen T. Nakasone
Associate Judge

Randall K. Schmitt and
Jordan K. Inafuku
(McCorriston Miller Mukai
MacKinnon LLP)
for Respondent-Appellant/Cross-Appellee
Knox Hoversland Architects, Ltd.

Jeffre W. Juliano,
Kelvin H. Kaneshiro, and
Lahela H.F. Hite
(O'Connor Playdon Guben &
Inouye LLP)
for Respondent-Appellant/Cross-Appellant
ConstRX, Ltd.

Terrance M. Revere and
Malia R. Nickison-Beazley
(Revere & Associates, LLLC)
for Claimant-Appellee/Cross-Appellee
Association of Apartment Owners
of the Palm Villas at Mauna Lani,
by and through its Board of
Directors

21

DISSENTING OPINION BY MCCULLEN, J.

I respectfully dissent.  Notwithstanding an arbitrator's duty to disclose, Hawaii Revised Statutes (**HRS**) § 658A-12 (2016) requires that an objection be timely.  Here, the Association of Apartment Owners of the Palm Villas at Mauna Lani Resort's (**AOAO**) objection was not.

## I.  RELEVANT BACKGROUND

### A.  November 18, 2013 - Arbitrator Disclosure

On November 18, 2013, Arbitrator Judge Riki May Amano (Ret.) (**Arbitrator**) disclosed a relationship with attorneys Terrance M. Revere, Cid H. Inouye, and Jeffre W. Juliano, as well as attorneys in their firms.  She explained to the parties that she knew these attorneys and other attorneys in their firms in her capacity as a former judge and as an arbitrator and mediator with the Dispute Prevention & Resolution, Inc. (**DPR**).  Arbitrator also disclosed that she did not know Malia Nickison-Beazley, who was Attorney Revere's co-counsel representing AOAO.

### B.  May 1, 2014 - Attorney Juliano's Statement

About five months later, on May 1, 2014, at the pre-arbitration conference attended by counsel for all parties, Attorney Juliano stated that Attorney Inouye appeared before Arbitrator in an unrelated arbitration the day prior.  In that unrelated matter, Arbitrator was selected by DPR via strike-off method on November 6, 2013, eight days before she was selected as arbitrator in this case.  This was previously unknown to Attorney Revere.  No further inquiry, comment, or objection was made following Attorney Juliano's statement as to Arbitrator's

22

continued service.  The arbitration proceeding soon followed, commencing on May 5, 2014 and concluding on May 12, 2014.

**C.    September 16, 2014 - Interim Arbitration Award**

About ten months after Arbitrator's disclosure that she knew Attorney Inouye and about four months after Attorney Juliano's statement that Attorney Inouye appeared before Arbitrator in an unrelated matter, Arbitrator issued the Interim Arbitration Award (**Interim Award**) against AOAO and in favor of ConstRX, Ltd. (**CRX**) for $205,539.49 (the unpaid balance owed by AOAO) and $431,462.47 (retainage) on September 16, 2014.  CRX's remaining affirmative claims against AOAO were denied.  The Interim Award resolved all claims as to all parties except for attorneys' fees and costs, and the parties were asked to submit briefs addressing attorneys' fees and costs for the forthcoming Final Arbitration Award (**Final Award**).

**D.    September 23, 2014 - AOAO's Request**

Seven days after the Interim Award, Attorney Revere requested additional disclosures regarding Arbitrator and the attorneys in this matter, as well as the attorneys in their firms, going back seven years as follows:

> [A]ny and all matters in which [the Arbitrator] served as mediator, arbitrator, or in any other capacity for any matters involving any of the parties or law firms retained in this matter in the last seven years, including dates when the retentions began and when they terminated. We also ask that if there are any other personal or professional relationships involving any of the parties or lawyers in the law firms (not limited to just counsel that appeared in this matter) that they be disclosed.

The parties responded.

**E.    AOAO's Motions To Disqualify**

Based on the responses to AOAO's request, AOAO filed a Motion to Disqualify the Arbitrator with DPR.  DPR denied the

23

motion because

> there [was] no rule or statute authorizing DPR to disqualify an arbitrator after an award has been issued based on a party's post award investigation of the Arbitrator's prior disclosures[,] which were not objected to and because there exists no stipulation or agreement of the parties vesting DPR with such authority.

In response to Arbitrator's supplemental disclosure following AOAO's request, AOAO moved a second time to disqualify Arbitrator, which DPR dismissed.  DPR determined that, "[w]hile the [second] Motion to Disqualify comes on the heels of the Arbitrator's Supplemental Disclosure of October 21, it remains grounded and predicated on [AOAO's] reaction to the Arbitrator's Interim Award[,] [] its post award investigation of the Arbitrator's prior disclosures[,] and the conviction that said disclosures were inadequate."

## F.   Circuit Court Proceedings

After the Final Award affirming the Interim Award and awarding CRX and Knox Hoversland Architects, Ltd. (**KHA**) attorneys' fees and costs was issued, CRX moved to confirm the Final Award in the Circuit Court of the First Circuit (**Circuit Court**), and KHA joined.  AOAO moved to vacate the Final Award.

During arguments before the Circuit Court regarding whether an evidentiary hearing was necessary, Attorney Revere claimed he did not hear Attorney Juliano's statement at the pre-arbitration conference, "I won't say that's not true. It could have happened before I got in the room.  It could have happened some other time, but I'm telling you, I never heard that[.]"

At a status conference, "all counsel agreed that no evidentiary hearing would be necessary to dispose of the consolidated motions[.]"  The parties submitted seventy-five

joint exhibits to the Circuit Court.  Among these exhibits was a declaration by Attorney Juliano, in which he described his May 1, 2014 statement at the pre-arbitration conference:

> I specifically brought up with Judge Amano in front of counsel the fact that my partner, Mr. Inouye, and associate, Mr. Kopper, were before her the day prior on April 30, 2014 arguing their MSJ in the other unrelated arbitration proceeding.  In particular, I inquired as to whether Mr. Kopper argued the motion.

Parties made their final arguments; the Circuit Court granted AOAO's motions to vacate, and denied CRX and KHA's motion to confirm.  The Circuit Court made the following pertinent findings regarding Arbitrator's disclosure and Attorney Juliano's statement prior to the arbitration proceeding:

> 17.   On November 18, 2013, Judge Amano, through Kelly Bryant, Case Manager at DPR, provided the following disclosure by email addressed to Attorneys Revere and Juliano:
>
>> I know counsels Terry Revere, Cid Inouye and Jeff Juliano, and I have worked with other lawyers in their respective law firms, in my capacity as a former state court judge between 1992-2003 or in my post-retirement years as an arbitrator or mediator with DPR; I do not know Malia Nickison-Beazley.
>>
>> I have no other professional, social or personal interactions with anyone involved in this case.
>>
>> There are no relationships or interests, past or present[,] that would affect my neutrality as an arbitrator in this case.
>
> Joint Exh. 2.
>
> 18.   In the same email, Ms. Bryant advised that:
>
>> The Judge has made a diligent effort to disclose all relevant matters.  If any party has additional information that should be disclosed but has not been, or you have any comments or objections, please submit them in writing to DPR by **November 21, 2013.** (Emphasis in original.)
>
> *Id.*
>
> 19.   Ms. Bryant copied Attorney Inouye (O'Connor Playdon), Alison Shigekuni, Esq. (O'Connor Playdon), Mea Mitchell, Esq. (Revere & Associates), and Attorney Nickison-Beazley (Revere & Associates) on the November 18, 2013 email containing Judge Amano's initial disclosure. *Id.*

25

20. No party submitted comment or objection to Judge Amano serving as arbitrator in response to her November 18, 2013 initial disclosure.

. . . .

28. On May 1, 2014, counsel for all the parties herein attended a pre-arbitration conference before Judge Amano at DPR's office. Joint Exh. 1, Juliano Decl. [paragraph] 5.

29. At said pre-arbitration conference, Attorney Juliano disclosed that Attorneys Inouye and Maxwell K. Kopper (previously an associate at O'Connor Playdon) were before Judge Amano the day before, April 30, 2014, arguing an unrelated motion for summary judgment. *Id*.

30. In said unrelated matter, unbeknownst to Claimant, Ms. Bryant had confirmed on November 6, 2013, that Judge Amano was selected as the arbitrator, eight days before Judge Amano was selected as arbitrator in this matter.

31. There was no objection made at the May 1, 2014 pre-arbitration conference with respect to Judge Amano serving as arbitrator in this matter.

No party challenged these findings pursuant to Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(C). These findings are thus binding on this Court. State v. Torres, 125 Hawaiʻi 382, 388, 262 P.3d 1006, 1012 (2011). CRX and KHA appealed to this Court.

## II. DISCUSSION

HRS § 658A-12 provides, in relevant part, as follows:

(c) If an arbitrator discloses a fact required by subsection (a) or (b) to be disclosed and a party timely objects to the appointment or continued service of the arbitrator based upon the fact disclosed, the objection may be a ground under section 658A-23(a)(2) for vacating an award made by the arbitrator.

(d) If the arbitrator did not disclose a fact as required by subsection (a) or (b), upon timely objection by a party, the court under section 658A-23(a)(2) may vacate an award.

HRS § 658A-12(c) and (d) (2016) (formatting altered and emphases added). The well accepted rule in arbitration cases is that a party who "fails to raise a claim of partiality [against an arbitrator] prior to or during the arbitration proceeding is deemed to have waived the right to challenge the decision based on evident partiality." Nordic PCL Constr., Inc. v. LPIHGC, LLC,

136 Hawaiʻi 29, 52, 358 P.3d 1, 24 (2015) (citation and internal quotation marks omitted, emphasis added).

Further, "[i]t is well settled that the legislature overwhelmingly favors arbitration as a means of dispute resolution." Tatibouet v. Ellsworth, 99 Hawaiʻi 226, 234, 54 P.3d 397, 405 (2002). Given this policy favoring the finality of arbitration awards, Hawaiʻi courts embrace the principle of waiver in order to discourage parties from adopting the "wait and see" approach to challenging the arbitration decision based on information they had or could have ascertained by more thorough inquiry. See Nordic, 136 Hawaiʻi at 53, 358 P.3d at 25.

Here, in addition to having actual knowledge of Arbitrator's professional relationship with Attorney Inouye in her capacity as an arbitrator and mediator with DPR, a reasonable inference from the Circuit Court's unchallenged findings is that AOAO had knowledge of Attorney Inouye appearing before Arbitrator in an unrelated matter. The Circuit Court found that all parties attended the pre-arbitration conference, and there, Attorney Juliano disclosed that Attorney Inouye appeared before Arbitrator in an unrelated matter the day prior. See Daiichi Hawaiʻi Real Estate Corp. v. Lichter, 103 Hawaiʻi 325, 346-48, 82 P.3d 411, 432-34 (2003). See also Black's Law Dictionary 1043 (11th ed. 2019) (defining constructive knowledge as "[k]nowledge that one using reasonable care or diligence should have").

Although Attorney Revere, during a hearing on the necessity of an evidentiary hearing, asserted to the Circuit Court that he did not hear Attorney Juliano's disclosure, that assertion was argument, not evidence. State v. Quitog, 85

27

Hawaiʻi 128, 144, 938 P.2d 559, 575 (1997) ("[I]t is axiomatic that the arguments of counsel are not evidence.") (citation and internal quotation marks omitted). Notably, Attorney Revere did not provide a declaration to that effect in the joint exhibits comprising the stipulated record, did not make similar assertions regarding his co-counsel who appears to have participated significantly in this case, and stipulated that an evidentiary hearing was unnecessary.

In sum, the Interim Award was issued ten months after Arbitrator disclosed knowing Attorney Inouye in her capacity as an arbitrator with DPR, and four months after Attorney Juliano stated at the pre-arbitration conference that Attorney Inouye appeared before Arbitrator in an unrelated matter. During that time, AOAO did not comment on, or object to, Arbitrator's ability to be a neutral arbitrator. See Nordic, 136 Hawaiʻi at 52, 358 P.3d at 24 (explaining that "a party who has actual or constructive knowledge of a relationship of the arbitrator requiring disclosure but fails to raise a claim of partiality prior to or during the arbitration proceeding is deemed to have waived the right to challenge the decision based on evident partiality.") (cleaned up and emphasis added). Instead, AOAO employed a "wait and see" strategy, requesting more information and challenging Arbitrator's neutrality only after the Interim Award did not go its way.

### III. CONCLUSION

Therefore, I would hold that AOAO waived its right to challenge the Arbitrator on the ground of evident partiality because its objection was untimely, and that the Circuit Court

28

abused its discretion in vacating the Final Award.  See id., 136 Hawaiʻi at 53, 358 P.3d at 25 (explaining that "[a]ny such ruling of the circuit court under HRS [§]658A-12(d) will be reviewed under an abuse of discretion standard").

/s/ Sonja M.P. McCullen
Associate Judge